**George William BRADY and Leroy Marshall, Appellants,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

April 5, 1979.

Certiorari Denied by Supreme Court July 2, 1979.

Clyde A. Dunn, Newport, Carl R. Ogle, Jr., Jefferson City, Jerry K. Galyon and David B. Maxwell, Sevierville, for appellants.

William M. Leech, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Al C. Schmutzer, Jr., Dist. Atty. Gen., Richard R. Vance, Asst. Dist. Atty. Gen., Sevierville, for appellee.

## OPINION

DWYER, Judge.

George William Brady and Leroy Marshall were each convicted of four charges of first degree murder and four charges of use of a firearm in committing a felony. Each appellant's punishment was fixed at 99 years in the State penitentiary on each charge of first degree murder and five years in the State penitentiary on each charge of use of a firearm in the commission of a felony. The trial court ordered the sentences to be served consecutively. The appellants appeal with assignments of error.

At approximately 9:30 a. m. on Saturday, April 9, 1977, the Kodak Branch of the Citizen's National Bank located on Highway 66 in Sevier County was robbed and four persons were found shot and killed, execution-style. Three employees of the bank, Hugh Kyle Beeler, vice president and manager, Harriett Swaggerty, receptionist, and Linda Simms Davis, head teller, and Earl Underwood, a customer, were all found "ly-

ing flat on their stomachs" on the floor in the drive-in window area of the bank in close proximity to one another. Each had been shot in the head at close range with either a .38 or a .32 caliber weapon. Mrs. Swaggerty was still alive when the first investigating officers arrived at the scene; however, she expired shortly thereafter without regaining consciousness.

The record reveals that Mr. Underwood was in the bank to deposit three dollars in pennies in his granddaughter's savings account. An audit by bank officials disclosed that $28,564.40 had been taken, part of which was "bait money" (serial numbers recorded) which consisted of three five-hundred-dollar packages of twenty-dollar bills. An iron grey box was also taken from inside the vault.

The Sheriff's Office of Sevierville, the T.B.I. and the F.B.I. made an intense and immediate investigation into this heinous crime. The evidence in the record reveals that two white males were seen in a brown Torino Ford equipped with racing tires on the rear near the bank before the robbery. While on patrol at approximately midnight, April 9, 1977, a deputy sheriff of Sevier County stopped a Ford Torino which matched this description in Pigeon Forge. The driver was appellant Brady. The appellant consented to drive to the Sheriff's office at Sevierville. The deputy followed him. The record reveals that at the Sheriff's office F.B.I. Agent Ronald Reisner read appellant Brady his rights before interrogating him. Agent Reisner also read and explained to appellant Brady a "consent to search" form, which gave consent to the agents to search his car; Brady signed the form. When the appellant was asked for the keys to his car, he furnished the agents with the ignition key but said he did not have a trunk key. A thorough search of the entire car revealed $2,954 in the trunk, of which $500 was "bait money", and a .38 caliber revolver under the dash. According to an F.B.I. firearms examiner at the trial, the revolver's riflings matched the rifling impression of the bullets which were removed from three of the victims. After Brady was formally arrested, a search of his person revealed hidden in his shoes, $4,692, of which $500 was "bait money" and a key that fit the trunk of his car. Brady when questioned at that time denied knowing Marshall.

The appellant Marshall voluntarily came to the Newport Police Department in Newport, Tennessee, at approximately 9:00 p. m., April 9, and when questioned maintained that he was elsewhere at the time of the crime; that he knew Brady and was sure he was not with him that morning. He was allowed to leave but was taken into custody at approximately 5:00 a. m. Sunday, April 10, 1977. The record reveals that Mrs. Clara Nell McClure, wife of Marshall's half-brother, testified that Marshall came to her house on the evening of April 9 and asked her to bury a pistol. When she asked him if it was "hot" he said no, but he had one that would burn her hands. He also gave her a sack which he said contained $2,500 "hot ones". On April 10, 1977, Mrs. McClure gave the pistol, a .32 caliber automatic weapon and $2,510 to the F.B.I., of which three twenty-dollar bills were "bait money".

Bobbie Rollins, appellant Brady's only daughter, testified that around noon on April 9, her father and Marshall came to her house in her father's brown Ford Torino. She testified that Marshall had a bag in his hand and what appeared to be a pistol butt in his belt. They then asked her to drive them to Newport. On the way her father had her to stop at a river at which time he took the metal box to the river and later said he threw it in the river. A box was later recovered near the river and was identified as being identical to the metal box taken from the vault of the robbed bank.

Mr. Jesse Brooks, a customer at the bank on April 9, 1977, identified Marshall as the driver of a Ford Torino who inquired of him on the bank parking lot that morning as to when the bank would open. He further testified that there was another occupant in the car.

A hair found on the shirt of Mr. Underwood was identified by a fiber and hair examiner expert of the F.B.I. as exhibiting the same microscopic characteristics as do the hairs that were taken from the head of Marshall.

The appellants did not testify but offered in their behalf several witnesses and stipulated statements taken from witnesses. Defense witness, Mr. Kenneth McClure, testified that he did not see appellant Marshall on the night of April 9. Another defense witness testified he took Brady home at approximately 12:30 p. m. on April 9. Billy Cureton, owner of a used car lot in Newport, testified that on April 9, between 11:00 and 12:00 p. m., appellant Marshall had purchased a car from him.

ASSIGNMENT OF ERROR I: THE ENTIRE JURY SELECTION PROCEDURE WAS SO IRREGULAR AS TO CONSTITUTE REVERSIBLE ERROR AND THE COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION TO QUASH THE ENTIRE JURY PANEL.

█ Both appellants contend that the jury selection process and the denial of their motion to quash the entire jury panel was error. The appellants contend that the court consistently rehabilitated prospective jurors who had formed fixed opinions as to the guilt or innocence of the appellants which caused the appellants to exercise peremptory challenges on these jurors. We have reviewed the eight hundred or so pages of the record which cover this jury selection process. While it may be true that many of the jurors knew about appellants' prior convictions in the Federal trial for robbery, all of the jurors expressed upon their oaths they could and would give the appellants a fair trial. We are satisfied under *Sommerville v. State*, 521 S.W.2d 792 (Tenn.1975) and *State v. Jefferson*, 529 S.W.2d 674 (Tenn.1975) that the appellants had an impartial jury and the trial court did not abuse his discretion in questioning the jurors. We are also satisfied the court did not seat any juror contrary to the provisions of T.C.A. 40–2507. The first assignment of error is overruled.

ASSIGNMENT OF ERROR II: THE COURT ERRED IN DENYING APPELLANTS' APPLICATION FOR CHANGE OF VENUE.

█ The record shows that the appellants filed numerous newspaper articles concerning the coverage of the events, i. e., the investigation, the arrests, and the Federal trial. They also filed a survey conducted by the appellant Marshall's counsel's secretary which, the appellants contend, prove that twenty-three out of twenty-five individuals on the streets of Sevierville had heard of the bank robbery-murder at the Kodak Branch of the Citizens National Bank. The matter of change of venue addresses itself to the sound discretion of the trial judge. *Rippy v. State*, 550 S.W.2d 636 (Tenn.1977). The trial judge took the motion for change of venue under advisement until it manifestly appeared after the jury voir dire that a fair and impartial jury panel had been selected. Therefore, we are satisfied, as was the trial court, that no undue excitement had been shown, T.C.A. 40–2201, and that the appellants did receive a fair trial in that community. With respect to the situation where prospective jurors may have had some knowledge of the events and issues, we agree with the court in *Irvin v. Dowd*, 366 U.S. 717, 721, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961):

" 'The theory of the law is that a juror who has formed an opinion cannot be impartial.' *Reynolds v. United States*, 98 U.S. 145, 155, 25 L.Ed. 244. It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. . . . To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut a presumption of a prospective juror's impartiality would be to establish

an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court."

We are satisfied the trial court did not abuse its discretion in denying the motion. The assignment is overruled.

ASSIGNMENT OF ERROR III: THE COURT ERRED IN NOT QUASHING THE INDICTMENTS FOR MURDER IN THAT THE APPELLANTS HAD PREVIOUSLY BEEN CONVICTED FOR THE CRIME OF BANK ROBBERY IN THE UNITED STATES DISTRICT COURT IN KNOXVILLE, TENNESSEE, AND THE INDICTMENT FOR WHICH THESE APPELLANTS WERE TRIED CONSTITUTE DOUBLE JEOPARDY.

■ The appellants contend that the Federal conviction would bar the State's prosecution. We are satisfied that the conviction of each appellant in Federal Court for the offense of bank robbery, Title 18, U.S.C. § 2113(a), (e), resulted in one punishment, its severity determined by the nature of the accompanying aggravating circumstances, i. e., four murders. *United States v. Rossi*, 552 F.2d 381 (1st Cir. 1977). The indictment and conviction in Federal Court did not include a separate offense of murder. The appellants in the instant case were indicted and convicted of first degree murder. Hence, there is no double jeopardy here. This assignment is overruled.

ASSIGNMENT OF ERROR IV: THE TRIAL COURT ERRED IN NOT GRANTING APPELLANTS' MOTIONS FOR CONTINUANCE.

It is appellants' reasoning they did not have sufficient time to prepare for trial. The record reflects appointment of counsel on June 8, 1977, with trial commencing on July 13, 1977, which exceeds the fourteen day requirement in T.C.A. 40–2005. We note counsel had the benefit of conferring with appellants' counsel in the Federal trial.

■ Continuance is a matter which addresses itself to the sound discretion of the trial court. The exercise of this discretion will not be disturbed unless there is a clear showing that the appellants have been prejudiced in some way by the refusal to grant a continuance. *Moorehead v. State*, 219 Tenn. 271, 409 S.W.2d 357 (1966). We agree with the trial court in that the appellants had "sufficient" opportunity to prepare their case under the facts and circumstances of the case. *Brown v. State*, 553 S.W.2d 94 (Tenn.Cr.App.1977). Finding no abuse of discretion to the prejudice of the appellants, the assignment of error is overruled.

ASSIGNMENT OF ERROR V: THE COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR PSYCHIATRIC EVALUATIONS.

■ The only evidence adduced at the hearing on this motion was a statement of counsel that appellant Marshall had suffered a head injury in an automobile accident; therefore, the trial court did not abuse its discretion in denying the motion. T.C.A. 33–708(a).

ASSIGNMENT OF ERROR VI: THE COURT ERRED IN ALLOWING THE TESTIMONY OF F.B.I. AGENT, BOB NEILL, CONCERNING EVIDENCE OF HAIR SAMPLES.

■ The appellants content that the testimony of the expert witness on hair identification was speculative and the trial court erred in allowing it into evidence. We disagree. With proper instructions by the court, the weight to be given his testimony was, we think, a relevant factor for the jury. Therefore, this assignment is overruled.

ASSIGNMENT OF ERROR VII: THE COURT ERRED IN FAILING TO SUPPRESS TESTIMONY SURROUNDING THE IDENTIFICATION OF A BROWN AUTOMOBILE WHICH CONSTITUTED AN IMPROPER AND SUGGESTIVE "CAR LINE–UP".

■ We find no merit in appellant Brady's novel notion that identification of his automobile should have been suppressed be-

cause the "car line-up" was unduly suggestive. The facts and circumstances surrounding the identification of the Ford Torino in the police lot was a matter for the jury. This assignment is overruled.

ASSIGNMENT OF ERROR VIII: THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR SEVERANCE.

The granting of a motion for severance is within the sound discretion of the trial court. *Hodges v. State*, 491 S.W.2d 624 (Tenn.Cr.App.1973). To determine if there has been an abuse of that discretion, this court looks to whether the joint trial has developed prejudice to the defendants. *Woodruff v. State*, 164 Tenn. 530, 51 S.W.2d 843 (1932). Such a motion must be accompanied by an affidavit detailing the grounds for its necessity. *Mitchell v. State*, 92 Tenn. 668, 23 S.W. 68 (1893). Since no affidavit was filed by appellant Brady, his motion is without merit.

The appellant Marshall contends that evidence applicable to Brady used at the trial would establish his (Mitchell's) guilt by association. We are in full accord with the court in *Woodruff v. State*, supra, 164 Tenn. at page 538, 51 S.W.2d at page 845, where it says:

" . . . It may have been to the interest of each that he be tried alone, but the orders of the court are molded to protect rights, and not merely the interests, of persons accused of crime. The State, as well as the persons accused, is entitled to have its rights protected, and, when several persons are charged jointly with a single crime, we think that the State is entitled to have the fact of guilt determined and punishment assessed in a single trial, unless to do so would unfairly prejudice the rights of the defendants."

The appellant Marshall also contends that the statement by appellant Brady, in which he said he did not know Marshall, was a violation of *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Appellant Brady's statement does not inculpate appellant Marshall. There is thus no violation of the rule as stated in *Bruton v. United States*, supra.

ASSIGNMENT OF ERROR IX: THE COURT ERRED IN NOT TRANSFERRING THE APPELLANTS TO THE SEVIER COUNTY JAIL PENDING TRIAL IN ORDER FOR THEM TO ASSIST COUNSEL IN THEIR DEFENSE PREPARATION.

The fact that the appellants were not transferred to the Sevier County Jail pending trial, we think, did not unduly hamper them in the preparation of their defense. This assignment of error is overruled.

ASSIGNMENT OF ERROR X: THE COURT ERRED IN NOT GRANTING APPELLANTS' MOTION TO OBTAIN THE NAME AND ADDRESS OF THE INFORMER(S) WHO PROVIDED THE NAMES OF THE APPELLANTS AS THE PERPETRATORS OF THE OFFENSES FOR WHICH THEY WERE CHARGED.

With no evidence reflecting that the informant was a witness or participant in the crime, we find no abuse of the trial court's discretion in denying this motion. To hold otherwise under these circumstances would be against public policy and discourage citizens from giving information about criminal activity to law enforcement officials. *Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487 (1955). This assignment is overruled.

ASSIGNMENT OF ERROR XI: THE COURT ERRED IN FAILING TO SUPPRESS PHYSICAL EVIDENCE OBTAINED FROM THE AUTOMOBILE BELONGING TO THE APPELLANT GEORGE BRADY.

Appellant Brady contends that due to his intoxicated condition as well as his illiterate state he did not knowingly, voluntarily or intelligently consent to the search of his automobile. The trial court found after a full hearing on the motion to suppress that the F.B.I. agents fully advised the appellant Brady of his rights; the agent

read and explained the consent to search form to him. The agents also testified that Brady did not appear to be intoxicated. In matters of this kind the findings of the trial court will not be overruled unless we find the evidence preponderates against his ruling. We think the evidence supports his ruling that the search of appellant Brady's car was a free and voluntary consent search.

The appellant Marshall's rights were not violated by the search of appellant Brady's car. *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). This assignment of error is overruled.

ASSIGNMENT OF ERROR XII: THE COURT ERRED IN FAILING TO GRANT APPELLANTS' MOTION FOR MISTRIAL AFTER ALLOWING INTRODUCTION OF EVIDENCE BY THE PROSECUTION WITNESS, RON REISNER, WHO WAS USED TO IMPEACH A PRIOR STATE'S WITNESS AND ADDITIONALLY, THAT ERROR WAS COMMITTED BY DECLARING BOBBIE ROLLINS A HOSTILE WITNESS WHICH RENDERED THE IMPEACHMENT PROCESS ILLEGAL.

■■■ During the trial, in the corridor, after F.B.I. Agent Reisner had testified, Bobbie Rollins, appellant Brady's daughter, approached and informed him that she had seen her father and Marshall around noon on the robbery-murder date. They had driven to her house in the Ford Torino and wanted to borrow her car. Mrs. Rollins told them if they had committed the bank robbery they had left a live witness to identify them. Marshall stated to her, "That woman won't live, I shot her in the head." The agent reported this to the attorney general and it in turn was reported to the appellants. The witness Rollins obviously was trying to help her father and gave the information to the agent, we think, in the hope of acquiring some clemency for her father. At any rate, the attorneys for appellants in admirable candor reported to the court this information and further asked the court for guidance because they did not represent the witness and therefore could not advise her. When the proceedings resumed the witness got on the stand and denied making the statement.

In the first instance, we do not think under these facts that the witness rule was violated. *Nance v. State*, 210 Tenn. 328, 358 S.W.2d 327 (1962). We also think under these circumstances the court did not abuse its discretion in declaring the witness to be hostile and allowing cross examination when she denied making the statements to the agent. While we think perhaps the better practice would have been to lay a foundation for impeachment and then recall the agent in rebuttal at the close of all the proof, as urged by the appellant, this deviation did not affect the results. The assignment is overruled.

ASSIGNMENT OF ERROR XIII: THE COURT ERRED IN ALLOWING THE TESTIMONY OF AGENT WALTER BEARDEN CONCERNING INCRIMINATING ADMISSIONS OF THE APPELLANT, GEORGE BRADY, BECAUSE THE PROSECUTION FAILED TO COMPLY WITH THE APPELLANTS' DEMAND FOR DISCOVERY OF SUCH ADMISSION AND SAME WAS NOT FURNISHED.

■■■ The evidence from our review conveys the State had complied with the discovery order in that appellant Brady's statement in which he said he had put the pistol under the dash of his car was furnished to the appellants. The record also reveals that appellant Brady's counsel was aware this statement was used in the Federal trial. There was no ambush here. *Ferguson v. State*, 530 S.W.2d 100 (Tenn.Cr. App.1975). This assignment is overruled.

ASSIGNMENT OF ERROR XIV: THE VERDICT OF THE JURY WAS CONTRARY TO LAW AND SHOULD BE SET ASIDE IN THAT THE APPELLANTS WERE CONVICTED OF FOUR SEPARATE COUNTS OF USE OF A FIREARM IN COMMISSION OF A FELONY UNDER T.C.A. 39-4914, WHICH IS ENHANCEMENT PENALTY IMPOSED UPON AND IN ADDITION TO THE CRIMES OF FIRST DEGREE MURDER.

In conformity with *State v. Hudson*, 562 S.W.2d 416 (Tenn.1978), the record is remanded so that the trial court may revise each judgment to reflect murder in the first

degree committed by means of using a firearm, to wit: a pistol, and by providing that the punishment for each offense of murder shall consist of confinement in the State penitentiary for 99 years and, for using a firearm in the commission of that felony, confinement for five years in the State penitentiary; with the sentences to be served consecutively.

ASSIGNMENT OF ERROR XV: THE VERDICT OF THE JURY SHOULD BE SET ASIDE AND VACATED BECAUSE THE DEFENDANTS WERE NOT AFFORDED A SPEEDY APPEAL.

Since no prejudice has been shown by the delay in the appeal this assignment of error is without merit and overruled.

The judgment of the trial court is affirmed but remanded in accordance with *State v. Hudson*, supra.

TATUM and BYERS, JJ., concur.