**STATE of Tennessee, Appellee,**

v.

**James Harold HARPER and Leonard D. Hutchison, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

June 2, 1987.

Permission to Appeal Denied by Supreme Court Oct. 19, 1987.

W.J. Michael Cody, Atty. Gen. & Reporter, Bettye Springfield–Carter, Asst. Atty. Gen., Nashville, William E. Dossett, Dist. Atty. Gen., David C. Jennings, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Raymond A. Shirley, Knoxville, for Harper.

Douglas A. Trant, Knoxville, for Hutchison.

## OPINION

RICHARD R. FORD, Special Judge.

Jointly charged in a five-count indictment in Case No. 17037,[1] the appellants' first trial of eight days duration ended in a mistrial as to all counts, except the third count which had been voluntarily dismissed. Each of the appellants obtained successor counsel and were again tried. Each was convicted of burglary of an automobile, and each was also convicted of assault with intent to commit second degree murder, a lesser included offense. The appellants, individually and collectively, have presented a total of nine appellate issues. We affirm the judgments as to each appellant.

■ First, we have considered the appellants' third issue wherein they challenge the sufficiency of the convicting evidence. A number of well established principles of law apply to this issue. A jury verdict of guilt approved by the trial court accredits the testimony of the State's witnesses and resolves all conflicts in testimony in favor of the theory of the State. *State v. Hatchett*, 560 S.W.2d 627, 630 (Tenn.1978). A verdict against a defendant removes the presumption of innocence and raises a presumption of guilt on appeal. *State v. Grace*, 493 S.W.2d 474 (Tenn.1973). On appeal, the State is entitled to the strongest legitimate inferences which may be

drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). By procedural rule, a conviction in a criminal action shall be set aside where the reviewing court finds that the evidence is insufficient to support the findings by a trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e).

■ The State's proof in chief was presented by six witnesses including the two victims. On September 2, 1982, at approximately 3:00 a.m., the victim, James David Comer, a tenant in the Windover Apartment Complex, was asleep in his second floor apartment. He slept with his bedroom windows open. Awakened by a tapping noise in the parking lot, Comer went to the bathroom. A few minutes after turning off his bathroom light, he heard the tapping noise again.

From his balcony Comer, using a twelve volt hunter's lantern, directed a light beam to the source of the tapping noise. It came from within an automobile, which was later ascertained to be the property of the other victim, Jane Marie Wells. Comer saw two men in the automobile whom he did not know. The automobile was located sixty-six feet from Comer's balcony. The occupants jumped from the automobile, faced towards Comer, then ran from the lighted area to the darker side of the parking lot.

Comer ran to his telephone, dialed the police emergency number 911, and without waiting for a response, he ran to his car. He drove alongside the Wells' automobile and observed the windows were fogged over, and that the "o" ring had been knocked off the ignition switch.

Circling around the apartment complex area, Comer drove back into the complex area where he again saw the appellants. As the appellants' vehicle, an old-type racing car with red primer paint, approached from the opposite direction, Comer forced it to the curb at a "dog-leg" in the driveway.

After stopping the appellants, Comer, who was armed, walked to within two feet

---

**1.** In a companion case, No. 17038, Hutchison was convicted of the possession of burglary tools, a conviction not included in this appeal.

of Hutchison, the driver. Comer told the appellants, "Boys, you're caught. Don't do anything silly. Everything is going to be all right. The police have already been called." The appellants' sudden and violent response was described by Comer as follows:

And I looked into the car. I actually put my—I was as far from this microphone to Mr. Hutchison's face. A little silly probably, but I was that close. At that time when I did that, Mr. Hutchison gunned the car and tried to run over me. At that time I jumped back and rolled across the—my trunk lid, and that's when the first shot entered my body, my right side. And then I fell behind my car, and I got off one shot at their tire. And I was shot twice more in the abdominal—in the, uh—in the back. Once in the lower back and once in the upper back. And then he drove off.

Comer described the two men to the police, and at trial he identified each of the appellants from his initial encounter with them, as well as from his subsequent confrontation of them.

While in the hospital, Comer was shown two pictorial line-ups. He quickly and positively identified Hutchison's photograph in one of the pictorial arrays. Subsequently, he made a positive identification of Harper's photograph included in another pictorial array. Hutchison was arrested in the mobile home of his girlfriend, where the arresting officers seized a bag of burglary tools, including a "slam hammer" or "dent puller." Harper was arrested soon thereafter.

Jane Marie Wells, the victim of the burglary, had parked and locked her 1980 Oldsmobile Supreme Cutlass in the apartment complex parking lot at 9:00 p.m., August 31, 1982. About 4:45 p.m., on September 1st, she discovered it had been broken and entered. She found a screw driver and a broken screw in the driver's seat. The "butter-fly" end of the ignition switch had been knocked off the steering column and was also found on the driver's seat.

Ms. Wells called the police. It was established that Comer, the shooting victim, had seen the appellants in the Wells' vehicle at the time he had investigated the tapping noise. Without repeating the evidence given by the officers who investigated the separate complaints of the victims, it is sufficient for our purpose to note that such evidence is consistent with the testimony given by each of the two victims. Additionally, there was other evidence consistent with the State's theory of the case.

There was more than ample evidence from which any rational trier of fact would conclude that the appellants are guilty of burglary of an automobile as charged in the first count, and guilty of assault with intent to commit second degree murder, a lesser included offense, as charged in the fifth count, beyond a reasonable doubt. See Rule 13(e), T.R.A.P., supra; *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). There is no merit to the appellants' challenge to the sufficiency of the convicting evidence.

■ Additionally, we note that as to the appellant Harper, he had entered a motion for a judgment of acquittal, but chose not to rely on it by proceeding with his alibi defense. Harper effectively waived his challenge to the sufficiency of the evidence by his election to introduce evidence in his own behalf. See *Mathis v. State*, 590 S.W. 2d 449, 453 (Tenn.1979).

■ For the first appellate issue, the appellant Hutchison contends that his motion to suppress his statements made during a jail-telephone conversation was erroneously refused. After our examination of the evidence adduced at the hearing, we agree with the ruling of the trial court.

Following his arrest, Hutchinson was permitted to make a telephone call from the booking room of the jail. The jail telephone was equipped with a continuous taping devise and a beeper. In addition to its security purposes, the continuous tape was made to preserve evidence that newly-arrested prisoners had been given an opportunity to make their entitled telephone calls.

Two of the jailors overheard some of Hutchison's remarks during his entitled

phone call. The jailors related what they had overheard to Detective Morris. After an examination of the jail's continuous tape, the detectives ascertained the telephone number dialed by Hutchison. The number was registered to the appellant, James Harold Harper. From the jail's continuous tape recording a reproduction copy was made of the Hutchison–Harper conversation. After considering all the circumstances and the content of the reproduced tape, the trial judge, who had researched the pertinent law, dismissed Hutchison's motion.

From our review of the exhibited tape it is apparent both appellants were on notice that the call originated on a jail telephone. At times the jail noises were of such magnitude as to require the appellant Hutchison to repeat himself. The tape is of 4.28.-50 minutes duration including dialing and waiting time. The conversation began when Harper asked Hutchison, "What happened?" Hutchison replied, "They come and got me charged with it, buddy. Got me on hold and $50,000 bond. I need you to get him and don't talk to nobody and just go to Ray Cates (sic)." Although it was apparent from the background jail noise that Hutchison was using a jail telephone, he nevertheless, within the first 22 seconds, warned Harper, "I'm on the thing, you know."

The conversation was punctuated with vulgar and profane language. Hutchison's statements were guarded, circumspect, hesitant, and cryptic. It was apparent that Hutchison had no expectation of privacy during the conversation. He related to Harper such public information as the type of charge, the amount of the bond, the arraignment date, and that he (Hutchison) had been picked out of a line-up. Hutchison added ... "I'm not going to say nothing till Cates gets here." Hutchison then instructed Harper to call attorney Ray Cates.

Hutchison also told Harper, "Hey, I'm suein' 'em," to which Harper replied, "I don't blame you." Near the end of the conversation, Hutchison again cautioned Harper, "So, I mean, I'm here at the cage

now. That's it. I just, you know, I ..." To this renewed warning, Harper replied, "I hear the damned thing beeping."

The appellant argues that the monitoring of his telephone call was prohibited by the *Omnibus Crime Control and Safe Street Act,* 18 U.S.C. §§ 2510–20. Although able counsel for the appellant recognized that police monitoring of jail telephones may qualify for an exception under § 2510(5)(a) of the Act, he insisted the subject Knox County Jail telephone did not qualify because there was no posted notice of the monitoring. Both the appellant and the State cite *United States v. Paul,* 614 F.2d 115, 6th Cir. (1980), cert. denied 446 U.S. 941, 100 S.Ct. 2165, 64 L.Ed.2d 796.

In *Paul,* the Circuit Court of Appeals held that prison monitoring was excepted under 18 U.S.C. § 2510(5)(a), which excludes from the ambit of Title III the interception of communications over equipment used by "an investigative or law enforcement official in the ordinary course of his duties ..." Id. 117. The admissibility of a communication on the prison telephone was upheld by the Circuit Court of Appeals. In a separate opinion in *Paul,* Senior Circuit Judge, the late Harry Phillips, concurring in result, wrote:

> While I agree with the majority opinion that the district court properly denied the defendant's motion to suppress, I do so on different grounds than those expressed in the majority opinion. I am convinced that Congress never intended Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20 (herein cited as Title III) to apply to prisons. Accordingly, I would hold that the warrantless monitoring in this case did not violate Title III, regardless of whether it can be said to fall within the language of one of the statutory exceptions.

We note that prior to the passage of the *Omnibus Crime Control and Safe Streets Act,* supra, the United States Supreme Court, by dictum in *Lanza v. New York,* 370 U.S. 139, 82 S.Ct. 1218, 8 L.Ed.2d 384 (1962), recognized that jailhouse conversation is not entitled to the privacy afforded

communications within a home, automobile, office, or motel room unless endowed by the law with particularized confidentiality.

In the case *sub judice*, we find that the trial judge correctly refused to order a suppression. Not only does it appear that the jail's master tape was made in a non-surreptitious fashion, it was done on a continuous tape, within the ordinary course of the duties of the law enforcement officers, without discrimination as to the users of the jail telephone. Moreover, our examination of the recording, as well as the transcript thereof, reveals that neither Hutchison nor Harper had any expectancy of privacy. Hutchison has shown no entitlement to relief on the first appellate issue.

■ For his second appellate issue, Hutchison asserts the trial court erroneously refused to suppress evidence consisting of a bag of tools. Evidence was adduced in the suppression hearing that Detectives Morris, Wade and Beckler had an arrest warrant for Hutchison. Between 11:00 p.m. and midnight on September 3, 1982, the detectives went to the trailer home of Natasha Johnson to serve the warrant on Hutchison, Ms. Johnson's live-in boyfriend. While going down the hall to a bedroom occupied by Hutchison, Detective Morris stumbled over a black bag of tools near the bedroom door. Some of the tools, including a "slam-hammer", protruded out the top of the bag. The officers did not then seize the bag of tools, but proceeded to arrest Hutchison.

While the officers had Hutchison in custody, they were in the process of seeking a search warrant, when an assistant district attorney arrived at the Johnson trailer. Ms. Johnson then gave her oral consent for the search of her trailer home. The applicability of the plain view doctrine notwithstanding, the officers seized the bag of burglary tools pursuant to a valid consent to search.

■ It is settled law that an accused may not object to the search of another's premises if the latter consents to the

search, even though incriminating property found on such premises is sought to be used against the accused. See C. Torcia, Wharton's Criminal Evidence, Vol. 4, § 731 (1973). The trial judge did not err by refusing to grant the appellant's motion to suppress.

■ For the fourth appellate issue, the appellant Harper contends that his pretrial pictorial line-up, and the subsequent in-court identification evidence, should have been suppressed. He has argued that the photographic identification procedure was impermissibly suggestive.

The adduced evidence on the hearing of the motion revealed Harper had accompanied the officers to the police station where he was photographed. His photograph was then included in a pictorial line-up array which was shown to the victim Comer in his hospital bed. We have examined the evidence pertaining to the showing of the array, and we have examined the exhibited array. The six photographs, including Harper's, are displayed in a folder with cut-out squares through which a full-face view of each participant is framed. The photographs were shown in such fashion as to show nothing except the face, neck and upper shoulder of each participant. None of the line-up participants, which included a former officer, two current officers,[2] was identified by Comer, except for Harper. Comer identified Harper as being one of the two men he had seen full-face as they got out of the burglarized automobile, and as being the passenger in the old car driven by Hutchison at the time of the confrontation and shooting. There was nothing suggestive about the array as shown.

The victim Comer had first observed Harper full-face, lighted by lamps in the parking lot, and by a beam of light from a 12 volt hunter's lamp. A few minutes later, after Comer had stopped the appellants' old car, he stood at the driver's door and observed both appellants face to face, Hutchison being the closer. Comer noticed

---

**2.** There was no evidence that any officer depicted in the line-up was involved in the investigation of the case.

that Harper then wore glasses (not depicted in the pictorial array photograph).

At trial Comer was positive as to his identification of Harper as being one of the two men who participated in the burglary and in the subsequent shooting. Comer had observed Harper and Hutchison from a distance of sixty-six feet as they emerged from the burglarized Wells' automobile. He had later observed them again, face to face, as he stood within inches of the driver, Hutchison, with Harper seated next to him. Comer's attention to the appellants was not casual, but on the contrary, it was a purposeful and intentional face to face confrontation.

When tested by the factors enumerated in *Neil v. Biggers*, 409 U.S. 188, 198, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972), we are satisfied from the totality of the circumstances that the identification evidence, as challenged by Harper, was properly allowed by the trial court.

Also, we find no merit to the ninth appellate issue wherein it is asserted that the trial court erroneously allowed in evidence a pictorial line-up array which included a "mug shot" of Hutchison. Specifically, the appellant Hutchison complains that the "mug shot" of him shows the date "3–3–79", a date prior to his arrest in the present case. He argues that such date implies prior criminal activity.

The pictorial array, filed as an exhibit, consists of eight similar photographs, including a photograph of Hutchison. All the photographs appear to have been made by the Knoxville Police Department. Each photograph, near the bottom, includes an information data board. The largest of the printed data, found in the center of the board, consists of a set of hyphenated numbers (the subject's date of birth). The medium size print contains the information, "KNOXVILLE TN POLICE DEPT" plus a six digit number. The smallest print consists of another set of hyphenated numbers found in the bottom right corner. On Hutchison's photograph, the lower right corner numbers are "3–3–79" (date of arrest). The board, itself, has no legend as to the purpose of the various numbers.

As to the person observing a pictorial line-up, the police data board serves no identification function. When such police-made photographs are used in a pictorial line-up, the better practice is to completely cover the data board.

■ Whether a photograph, police-made or otherwise, is admissible is a question for the trial judge in his discretion to resolve, and his ruling will not be disturbed unless there has been a clear abuse of such discretion. Cf. *State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978).

In *State v. Washington*, 658 S.W.2d 144, 146 (Tenn.Cr.App.1983), we cautioned that the danger in the introduction of mug shots of the accused is that an inference of previous criminal activity may arise. We also noted that police photographs (mug shots) alone are not sufficient to cause such inference.

In the case *sub judice* there is nothing in the record to indicate any of the numerical data shown on the police data boards were ever explained to the jury. The record does reflect that Comer's positive identification of Hutchison at the trial was based on Comer's face to face observations of Hutchison, and Harper, at the scenes of the crimes.

■ The triers of the fact heard the victim's graphic testimony of his confrontation of the appellants. As a part of Comer's description of Hutchison, Comer testified that Hutchison had a three or four days growth of beard, that he was dirty, unkept, and "smelled very bad." The evidence of the appellant's guilt was overwhelming. If we were to assume *arguendo* that it was error to allow the police data board shown in Hutchison's photograph to be admitted in evidence, we are satisfied that it was harmless beyond a reasonable doubt within the meaning of Rule 36(b) Tennessee Rules of Appellate Procedure.

■ For the fifth appellate issue the appellants insist they were erroneously denied a severance. They argue that in a joint trial the admission of a co-defendant's statement, which implicates the other, is

prejudicial error. The appellants' statement of the legal principle, without more, constitutes no basis for appellate relief. The appellant Hutchison chose to rest his case at the close of the State's proof in chief. The appellant Harper did not testify, but presented an alibi defense consisting of two witnesses, including his ex-wife. Her testimony as to Harper's alibi was devastated by cross-examination. Neither appellant refers to any specific statement, admission or confession attributed to the other.

We find no such separate statement, admission or confession implicating the other. However, the appellants refer to the tape of their joint, jailhouse telephone conversation admitted as a part of the trial evidence. Once the taped conversation began, neither of the appellants confessed or specifically implicated the other. The tape, reviewed above, revealed both appellants were aware they were on a monitored jail telephone. The bare fact that Hutchison placed the call to Harper did not constitute a basis for a severance.

Moreover, had there been a confession, another panel of this Court has held that the rule in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), does not apply to confessions which do not implicate a non-confessing defendant. *Dorsey v. State*, 568 S.W.2d 639, 642 (Tenn.Cr.App.1978).

In this State it is settled law that a motion for a severance is addressed to the sound discretion of the trial judge, who shall not be put in error for his denial of a severance unless it can be shown that the defendant was clearly prejudiced. *State v. Wiseman*, 643 S.W.2d 354, 362 (Tenn.Cr. App.1982); *Brady v. State*, 584 S.W.2d 245, 251 (Tenn.Cr.App.1979). We find no such showing in this case as to either appellant. This appellate issue is meritless.

For the sixth appellate issue the appellants insist the trial court erroneously denied cross-examination of the State's witness, James David Comer, concerning his suspension by the Board of Pharmacy. In an extensive jury-out proceedings, and during a thorough cross-examination of Comer, a pharmacist, he acknowledged he is the same James David Comer, who had been suspended by the Board of Pharmacy for one year, and that he was placed on probation for a period of five years pursuant to an agreed order entered June 9, 1981.

On cross-examination Comer also acknowledged that he had been charged by the Board of Pharmacy, in a civil proceedings, with ten counts of pharmacy law violations, including the failure to keep proper records, and that over a period of time, he had allegedly dispensed a large volume of Schedule II, III, and IV controlled substances to individuals without prescriptions, and to individuals whose prescription had expired, without authorization of the prescriber. Comer testified that although he had protested the charges, he and the Board of Pharmacy, to avoid the necessity and expense of a contested (civil) case hearing, entered into an agreement resulting in the entry of the June 9, 1981, agreed order.

We note that had the trial court permitted the cross-examination of Comer before the triers of fact, his cross-examiners would have been bound by his answers. At the conclusion of the *Morgan* hearing (*State v. Morgan*, 541 S.W.2d 385 (Tenn. 1976)), and after his examination of the exhibited charges and agreed order of suspension, the trial judge questioned whether the Board of Pharmacy charges had any bearing on the issue of the witness's credibility.

Referring to the Board's charge that pharmacist Comer failed to report sales or keep records, the trial judge commented, "[E]ven though it may be a violation of the criminal statutes, they don't necessarily involve the credibility. And that's what I am waiting to hear." No further evidence being presented during the hearing, the trial judge exercised the discretion accorded him by Rule 608(b), Federal Rules of Evidence, as adopted by our Supreme Court in *State v. Morgan*, supra. The cross-examination of pharmacist Comer concerning the civil disciplinary charges, as initiated and completed by the Board of Pharmacy, was disallowed.

As provided in Rule 608(b), supra, it is within the sound discretion of the trial court to allow or not to allow cross-examination of a witness as to specific instances of conduct concerning his character for truthfulness or untruthfulness. Absent a showing of an abuse of that discretion, we do not chose to disturb the ruling of the trial court.

For the appellants' seventh issue, they insist the first count of the indictment, alleging burglary of an automobile, should have been dismissed because of a fatal variance with the proof.

■ The proof was that the appellants were observed in the act of burglary of the described automobile. There was overwhelming proof that they not only broke and entered the automobile, but that they also knocked loose the "butterfly" portion of the ignition switch in furtherance of their intent to steal, albeit the entire automobile. Although the charging language, "with the intent to feloniously take, steal and carry away the goods and chattels of Jane Marie Wells, then and there to be found in said automobile," is imprecise as to the subject property of the appellants' intent, the charging language was sufficient to include any chattel, any part or accessory, whether attached or unattached, found in the automobile, and included the automobile in its entirety.

From a reading of the record it is apparent the appellants were not misled by the lack of more precise language. Neither does it appear that they would be deprived of any future defense plea of double jeopardy if again prosecuted on the same facts.

■ The early common law requirement of very strict conformity of the proof to the allegations of the indictment, even in minor and immaterial respects, is no longer the law of this State. Substance rather than form is now determinative of such questions.

Justice Ray L. Brock, Jr., for our Supreme Court in *State v. Moss*, 662 S.W.2d 590 (Tenn.1984) wrote:

The policy now followed in this and in most other jurisdictions is that before a variance will be held to be fatal it must be deemed to be material and prejudicial. A variance between an indictment and the proof in a criminal case is not material where the allegations and proof substantially correspond, the variance is not of a character which could have misled the defendant at trial and is not such as to deprive the accused of his right to be protected against another prosecution for the same offense. (Citations omitted).

Id. 592. This appellate issue is meritless.

Lastly, we have examined the appellants' eighth issue wherein they contend they were erroneously refused permission to cross-examine Billy Hall.

■ During the State's direct examination of Patrick Edward Wade, a special agent of the National Automobile Theft Bureau, he was asked whether he had gotten acquainted with "Mr. Hall." On replying in the affirmative, he was asked, "And Mr. Hall is who concerning this case?" The witness replied, "He was a person that raised as—a—I believe to be a look-alike of Leonard Hutchison." The appellants' prompt objection was sustained as to the witness's statement of belief.

Later, in the State's direct examination of Special Agent Wade, the assistant district attorney general, with the trial court's permission, had "Mr. Hall" brought into the court room, but did not question him. Instead, the prosecutor suggested, "Mr. Trant (counsel for Hutchison) can call him as a witness and do whatever the court will let him do ..."

The appellants chose not to call "Mr. Hall," who was excused from the court room without comment, and without giving any testimony for the State or for the appellants. The trial judge held that the mere presence of "Mr. Hall" in the courtroom did not give rise to a right of cross-examination by the appellants.

In our view the ruling of the trial court did not constitute error. The subject person of the prosecutor's direct examination was Special Agent Wade, not "Mr. Hall." The mere presence in the courtroom of an individual, whose role was nothing more

than to stand mute as an exhibit, while the prosecutor propounded a question to a witness, did not per se establish a right for the defendants (appellants) to cross-examine the exhibited person.

Were we to assume *arguendo*, the right of such cross-examination, the appellants have shown no prejudice. When the prosecutor asked Special Agent Wade, "Does he ("Mr. Hall") look anything like Hutchison?" the objection by defense counsel was promptly sustained.

There being no reversible error shown in the record, we affirm the judgments of the trial court as to each of the appellants.

BYERS and CORNELIUS, JJ., concur.