IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 26, 2005

## STATE OF TENNESSEE v. MICHAEL N. SMITH

**Direct Appeal from the Circuit Court for Coffee County**
**No. 33,410F     Gerald L. Ewell, Sr., Judge**

_____

**No. M2005-00173-CCA-R3-CD - Filed September 23, 2005**

_____

The trial court found the defendant, Michael N. Smith,  guilty of possession of a controlled substance with intent to sell or deliver and possession of drug paraphernalia.  On appeal, the defendant argues that the trial court erred in denying his motion to suppress evidence seized as a result of an investigatory stop.  Following our review, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J.C. McLIN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and DAVID H. WELLES, J., joined.

Cynthia M. Fort (on appeal), and Glen R. Funk (at trial), Nashville, Tennessee, for the appellant, Michael N. Smith.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; C. Michael Layne, District Attorney General; and Kenneth J. Shelton, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Facts and Procedural History

At the suppression hearing, Highway Patrol Officer Rhett Campbell, testified that he was patrolling the westbound lane of Interstate 24 in Coffee County when he observed the defendant's vehicle also heading westbound.  As Officer Campbell pulled up beside the defendant's vehicle and passed it, he noticed that the window tint on the driver's-side windows appeared darker than allowed by statute.  Officer Campbell also perceived that the window tint on the front windshield was excessive because it extended beyond the manufacturer's factory installed shade band.  After

observing the window tinting, Officer Campbell stopped the defendant's vehicle because he suspected the window tint violated Tennessee Code Annotated section 55-9-107(a)(1).[1]

Officer Campbell testified that upon approaching the vehicle, he told the defendant that he pulled him over because he thought his "window tint was too dark." After checking the defendant's driver's license and registration, Officer Campbell noticed a prescription pill bottle in the ashtray and inquired whether it belonged to the defendant. The conversation quickly turned to drugs; whereupon, the defendant admitted that he had used marijuana a few hours earlier and had drug paraphernalia in his possession. According to Officer Campbell, the defendant consented to a search of his vehicle when Officer Campbell told the defendant that he would be lenient if the paraphernalia was all the defendant had in his possession. At this time, the defendant acted strangely by shaking his head and saying, "No. I'm not going home." The defendant's response made Officer Campbell extremely nervous so he took the defendant's keys and placed them on the roof of the vehicle for his safety, then asked the defendant to be truthful with him. In response, the defendant admitted that he had approximately ten pounds of marijuana in the toolbox and bed of his vehicle. Hearing this, Officer Campbell advised the defendant of his *Miranda* rights, placed the defendant under arrest, and then searched the vehicle. In searching the defendant's vehicle, Officer Campbell uncovered what turned out to be over nineteen pounds of marijuana.

On cross-examination, Officer Campbell admitted that he did not have his "tint card" with him on the day he stopped the defendant. Officer Campbell stated that he did not realize his tint card was missing until after he had stopped the defendant. Officer Campbell reiterated that after he approached the vehicle the topic of conversation quickly went from window tint to drugs.

The defendant testified that Officer Campbell told him the reason his vehicle was stopped was because the window tint appeared too dark but that was the extent of the conversation. The defendant stated that the tint on his vehicle was installed by a reputable business; therefore, he did not believe that his window tint was illegal. According to the defendant, when Officer Campbell questioned him about the prescription bottle, he told the officer it was a prescription for penicillin. Further, the defendant acknowledged that he told Officer Campbell that he had recently smoked marijuana and produced drug paraphernalia when asked if he had "any other drugs in the vehicle." The defendant denied dropping his head and making the statement "I'm not going home."

The defendant stated that Officer Campbell told him "he had the right to search the vehicle after that point." Although the defendant recalled that Officer Campbell told him to be honest and asked whether he had any other controlled substances in the car, the defendant stated that he did not remember Officer Campbell ever saying, "If this is all that is in here, you are going home." The defendant admitted that before he was placed under arrest, he told Officer Campbell that he had about ten pounds of marijuana in his truck, but he was just taking it to be delivered somewhere.

---

[1]

Tennessee Code Annotated § 55-9-107(a)(1) states that windows of vehicles operated on public roads in Tennessee must have a visible light transmittance of at least thirty-five percent, and with the exception of the manufacturer's standard installed shade band, the windshield must have a light transmittance of at least seventy percent.

Timothy Turner, the owner of Extreme Auto Trim, testified that he installed the window tint on the defendant's truck. Turner recalled that he installed a "medium tint," darkened at thirty-five percent on the side windows of the defendant's truck. Turner could not recall if he installed tint on the front windshield of the defendant's truck. Turner also testified that he had been in the window tinting business for twenty-two years and was very familiar with Tennessee laws regarding window tint. As Turner explained, tint film comes in designated percentages and every vehicle that leaves his shop is always below the legal limit. Turner acknowledged that weather conditions and the size of the windshield could give the appearance that the tint is too dark or too low.

Following the suppression hearing, the trial court found that Officer Campbell had probable cause to stop the defendant's vehicle to determine whether the tint exceeded the lawful level of intensity on the side windows or the lawful width at the top of the windshield. Subsequently, the defendant was convicted of possession of a controlled substance with intent to sell or deliver and possession of drug paraphernalia and was ordered to serve a total effective sentence of two years.

## II. Analysis

On appeal, the defendant challenges the trial court's denial of his motion to suppress evidence of marijuana and drug paraphernalia found in his vehicle after he was stopped because of his window tint. Specifically, the defendant asserts that the investigatory stop was unreasonable because Officer Campbell did not have probable cause or reasonable suspicion to stop his vehicle for having illegally tinted windows. The defendant contends that the stop was pretextual because Officer Campbell could not have reasonably believed a tint offense occurred and never attempted to investigate this offense once he stopped the vehicle.

When reviewing the trial court's decision on a motion to suppress, this Court conducts a de novo review of the trial court's conclusions of law and application of law to facts. See State v. Walton, 41 S.W.3d 75, 81 (Tenn. 2001). However, the trial court's findings of fact are presumed correct unless the evidence contained in the record preponderates against them. See State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). "Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Lawrence, 154 S.W.3d 71, 75 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). Moreover, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001) (quoting State v. Keith, 978 S.W.2d 861, 864 (Tenn. 1998).

Both the state and federal constitutions protect individuals from unreasonable searches and seizures. See U.S. Const. amend. IV; Tenn. Const. art. I, § 7. Therefore, a search or seizure conducted without a warrant is presumed unreasonable and any evidence discovered subject to suppression. See Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971); State v. Bridges, 963 S.W.2d 487, 490 (Tenn. 1997). However, the evidence will not be suppressed if the State proves that

the warrantless search or seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement. State v. Binette, 33 S.W.3d 215, 218 (Tenn. 2000).

One of these narrow exceptions occurs when a law enforcement officer stops an automobile based on probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996); State v. Vineyard, 958 S.W.2d 730, 734 (Tenn. 1997). If the officer has probable cause to believe that a traffic violation has occurred, any seizure will be upheld even if the stop is a pretext for the officer's subjective motivations in making the stop. See Whren, 517 U.S. at 813-15; Vineyard, 958 S.W.2d at 734-35. Another such exception occurs when a law enforcement officer initiates an investigatory stop based upon specific and articulable facts that the defendant has either committed a criminal offense or is about to commit a criminal offense. Terry v. Ohio, 392 U.S. 1, 21 (1968); Binette, 33 S.W.3d at 218. This narrow exception has been extended to the investigatory stop of vehicles. See United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975); State v. Watkins, 827 S.W.2d 293, 294 (Tenn. 1992). In evaluating whether the law enforcement officer had reasonable suspicion to justify an investigatory stop, this Court must consider the totality of the circumstances, which includes the personal observations and rational inferences and deductions of the trained law enforcement officer making the stop. See Terry, 392 U.S. at 21; Watkins, 827 S.W.2d at 294. Objective standards apply, rather than the subjective beliefs of the officer making the stop. State v. Norword, 938 S .W.2d 23, 25 (Tenn. Crim. App. 1996).

Our review of the record indicates that Officer Campbell possessed reasonable suspicion to suspect that the defendant was engaged in criminal activity. Tennessee Code Annotated section 55-9-107(a)(1) states:

> It is unlawful for any person to operate, upon a public highway, street or road, any motor vehicle registered in this state, in which any window . . . has been altered, treated or replaced by the affixing, application or installation of any material which:
>
> (A) Has a visible light transmittance of less than thirty-five percent (35%); or
>
> (B) With the exception of the manufacturer's standard installed shade band, reduces the visible light transmittance in the windshield below seventy percent (70%).

The statute expressly authorizes a "police officer of this state to detain a motor vehicle being operated on the public roads, streets or highways of this state when such officer has a reasonable belief that the motor vehicle is in violation of subdivision (a)(1), for the purpose of conducting a field comparison test." Tenn. Code Ann. § 55-9-107(c). Here, Officer Campbell's testimony indicates that he stopped the defendant's vehicle based upon his observations that the darkly tinted windows of the defendant's vehicle violated a Tennessee statute. Although Officer Campbell did not realize that he did not have his "tint card" with him until he stopped the defendant, he issued the defendant a verbal warning about his tinted windows. In addition, Timothy Turner testified that he installed a thirty-five percent

-4-

tint on the side windows of the defendant's vehicle, which is the darkest tint allowed by law. According to Turner, certain weather conditions may cause the tint to appear darker than it actually is, and, depending on windshield size, a band of tint may appear to extend past the permissible factory installed band. Therefore, based upon the totality of the circumstances, it is our view that the officer's stop was not pretextual but based on reasonable suspicion that the defendant violated legal window tint limits.

Although not directly addressed in the defendant's brief, we also note that Officer Campbell's investigatory stop did not exceed its scope. A police officer's actions after conducting an investigatory stop must reasonably relate to the circumstances which justified the stop in the first place. See Terry, 392 U.S. at 20. The detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer, 460 U.S. 491, 500 (1983). Moreover, the officer should employ the least intrusive means reasonably available to investigate his or her suspicions in a short period of time. Id. In determining the reasonableness of the detention, the proper inquiry is whether during the detention, the officer diligently pursued a means of investigation that was likely to confirm or dispel his or her suspicions quickly. United States v. Sharpe, 470 U.S. 675, 686 (1985). "If the time, manner or scope of the investigation exceeds the proper parameters," a constitutionally permissible stop may be transformed into impermissible stop. State v. Troxell, 78 S.W.3d 866, 871 (Tenn. 2002). However, if the officer develops a reasonable suspicion that the occupant is engaged in other criminal activity during a valid stop, further detention is justified. State v. Branden Haney and Lawrence Davis, No. E2002-00559-CCA-R3-CD, 2003 WL 22169708, at *5 (Tenn. Crim. App., at Knoxville, Sept. 19, 2003).

Again, the record reflects that after initiating a stop in order to determine if the window tint on the defendant's vehicle was illegal, Officer Campbell noticed a prescription pill bottle in plain view, which led him to ask the defendant questions regarding drugs. During the conversation, the defendant admitted that he had recently smoked marijuana and voluntarily produced drug paraphernalia he was carrying. The officer was then justified in detaining the driver for the time reasonably necessary to determine whether the defendant had "any other drugs in the vehicle." As the conversation continued, the defendant admitted he had approximately ten pounds of marijuana in his truck, which gave the officer probable cause to search the defendant's truck. Where an officer has probable cause to believe a vehicle contains contraband and the mobility of the vehicle is an exigent circumstance, the vehicle may be searched or seized without a warrant. See Carroll v. United States, 267 U.S. 132, 153-56 (1925); State v. Leveye, 796 S.W.2d 948, 950 (Tenn. 1990).

In addition, Officer Campbell's testimony established that the defendant consented to a search of his vehicle. The trial court's finding that a search is consensual will not be overturned unless the evidence preponderates against the ruling. Brady v. State, 584 S.W.2d 245, 252 (Tenn. Crim. App. 1979). The trial judge accredited Officer Campbell's testimony by overruling the defendant's motion to suppress, and no facts are present that indicate the defendant's consent was not voluntary. The defendant's consent further supports our decision that Officer Campbell's continued detention of the defendant and search of his vehicle was lawful.

## III. Conclusion

-5-

For these reasons, we conclude that the trial court did not err in denying the motion to suppress. We therefore affirm the decision of the trial court, denying the defendant's motion to suppress.

_____
J.C. McLIN, JUDGE