STATE of Tennessee, Appellee,

v.

James Michael ASH, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

Dec. 11, 1986.

Permission to Appeal Denied by Supreme Court March 9, 1987.

John T. Henniss (Trial Counsel), Paul Bergmann, III (Appellate Counsel), Chattanooga, for appellant.

W.J. Michael Cody, Atty. Gen., Robert Conley, Asst. Atty. Gen., Nashville, Gary D. Gerbitz, Dist. Atty. Gen., Thomas Evans, William West, Asst. Dist. Attys., Gen., Chattanooga, for appellee.

OPINION

DUNCAN, Judge.

The defendant, James Michael Ash, was convicted of felonious possession of marihuana with intent to sell and of felonious possession of more than five (5) grams of a substance containing LSD with intent to sell, a class X felony. He was found to be an aggravated and persistent offender, and thus was sentenced to Range II sentences. He was sentenced to five (5) years for his marihuana conviction and thirty-five (35) years for his LSD conviction. His sentences will be served concurrently.

The defendant claims that his motion to suppress evidence should have been granted; that he was entitled to have the informant revealed; that his trial should have been severed; that some testimony should have been excluded; that section 39–6–417 of the Tennessee Code Annotated is unconstitutionally vague or overbroad; that he was denied effective assistance of trial counsel; and that there was insufficient evidence to support his convictions.

On January 27, 1984, Hamilton County Sheriff's officers, acting pursuant to a search warrant obtained that day, entered a residence at 928 Dartmouth Street, seized two different controlled substances, and arrested five persons who were in the house. Defendant was one of those persons arrested. The police seized a paper bag with marihuana in it, a small bag with 100 tablets of LSD in it, and a jar containing 2,940 tablets of LSD.

Defendant first contends that his motion to suppress the evidence of the controlled substances that were seized under the authority of the search warrant should have been granted.

The search warrant was issued upon the affidavit of Detective Gary Farmer of the Hamilton County Sheriff's Department. The affidavit stated, in part, that a reliable informant, who had previously given the affiant reliable information, had advised the affiant that "within the last 72 hrs" he had been on the defendant's premises and while there he saw "narcotic drugs including LSD, the same being on said premises in the possession of and control of" said defendant. The search warrant was obtained at 2:17 p.m. on January 27, 1984.

The defendant contends that the search warrant was invalid because it was issued upon false information in that it was impossible for the informant to have seen him on the premises within the time frame stated in the detective's affidavit. We find no merit to this contention.

■ The defendant presented witnesses at the suppression hearing who gave evidence that he was in Detroit, Michigan, some of the 72 hours prior to the issuance of the search warrant. He showed that he left work in Chattanooga at 3:00 p.m. on January 24 and arrived in Detroit at about 7:00 a.m. on January 25. There was also evidence that he received a money order at 10:00 a.m. in Detroit on January 27. He was arrested at about 8:00 p.m. on January 27 in Chattanooga. The defendant claims that based on this evidence it is clear that the informant lied about having seen the defendant within the 72 hours sworn to in the affidavit. This is incorrect. What this evidence does show is that the defendant was able to return to Chattanooga from Detroit in less than ten hours so it was possible for him to drive to Detroit within ten hours also. A witness testified that the defendant left work at 3:00 p.m. on January 24 but he did not arrive in Detroit until around 7:00 the next morning. This time table leaves about six hours of time unaccounted for on the afternoon and evening of January 24 and this period is within the 72 hours sworn to in the affidavit. It was certainly possible for the informant to have

seen the defendant in possession of LSD before the defendant went to Detroit.

■ Moreover, even if it could have been shown that the informant did not give reliable information, if there is a showing on the face of the affidavit that there was probable cause to issue the search warrant, the magistrate's action is not subject to review. *Soloman v. State*, 203 Tenn. 583, 315 S.W.2d 99 (1958). Probable cause is shown when the affiant has averred the underlying circumstances upon which the informant based his conclusions and has stated why he has concluded that the informant is reliable. *State v. Little*, 560 S.W.2d 403, 406 (Tenn.1978). The affidavit supporting the search warrant in this case states that an informant, who had given the detective reliable information in the past, had seen the defendant in possession and control of LSD within the past 72 hours. Thus, on its face, the affidavit sets forth an adequate basis for probable cause. *See e.g., Armstrong v. State*, 548 S.W.2d 334 (Tenn.Cr.App.1976).

■ If the affidavit shows sufficient probable cause, the search warrant may only be impeached if (a) the affiant makes a false statement with intent to deceive the court, or (b) the affiant makes a false statement recklessly. *Little*, at 407. The defendant argues that Detective Farmer could not have had reasonable grounds to believe the information given him by the informant, and therefore, the search warrant is impeachable. However, Detective Farmer testified at the suppression hearing that the informant had twice given him information that had resulted in convictions, and that he found the informant to be reliable. Even if the informant had given Detective Farmer misinformation, there was no reason for Detective Farmer not to believe him.

The trial court was correct in denying the motion to suppress the evidence seized pursuant to the search warrant. The affidavit was sufficient on its face, and there was no evidence to show that the affiant obtained the search warrant by making any false statements with intent to deceive or by making any recklessly false statements.

Next, defendant complains that the trial court erred in refusing to grant his motion to reveal the identity of the informant. This complaint is also based on his belief that the informant could not have seen the defendant in possession of LSD during the 72 hours prior to the issuance of the search warrant. As discussed above, this is an erroneous belief.

■ The State's privilege to withhold the identity of an informant yields when the defendant can show that the informant was a witness or a participant in the crime and thus, a material witness, *Brady v. State*, 584 S.W.2d 245 (Tenn.Cr.App.1979); *Carver v. State*, 570 S.W.2d 872 (Tenn.Cr.App. 1978); *Roberts v. State*, 489 S.W.2d 263 (Tenn.Cr.App.1972), or when there is some doubt as to the existence of the informant. *State v. Brown*, 618 S.W.2d 325 (Tenn.Cr. App.1981). "Where the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 60–61, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

■ The defendant does not contend that the informant was a participant in the crime, or that he was a material witness to the facts surrounding the actual search of the defendant's premises; rather, the defendant merely wanted the informant revealed in order to attack the validity of the search warrant. For the same reasons stated in our discussion of the defendant's first issue, the defendant was not entitled to have the informant's identity revealed for this purpose.

The decision on whether or not to reveal an informant is within the trial court's discretion. We find no abuse of discretion in this case.

The defendant also claims that the trial court abused its discretion in refusing to sever his trial from that of three codefendants. At the end of the proof, the cases were dismissed against two of these codefendants. The other codefendant was found guilty along with defendant.

"Severence is a matter addressed to the sound discretion of the trial judge. The exercise of that discretion by the denial of a motion for severance will not be reversed unless it appears that the defendants were prejudiced by the trial judge's failure to sever." *State v. Lunati*, 665 S.W.2d 739, 745 (Tenn.Cr.App.1983).

■■■ The defendant argued at the hearing on the motion to sever that his codefendant Nelda Guinn could provide exculpatory evidence, but that she would probably claim her fifth amendment right not to testify at a joint trial. It is not an abuse of the trial court's discretion to refuse to sever when the defendant claims that a codefendant would have given exculpatory testimony at a separate trial but the codefendant invoked the fifth amendment at a joint trial. *United States v. Vaughn*, 422 F.2d 812, 813–14 (6th Cir.1970). In fact, Guinn did testify at the present trial. Her testimony could be viewed as helpful to the defendant's case.

Furthermore, there is no evidence or indication in the record that any of the other codefendants would have been willing to testify for the defendant at a separate trial, or even had they been willing, that they would have provided any exculpatory evidence. The defendant has failed to show that any prejudice resulted to him by reason of the joint trial. This issue is overruled.

Defendant's next issue concerns the testimony of Lt. John Cupp of the Hamilton County Sheriff's Department. He was qualified as an expert in the field of trafficking of LSD. The State proposed that his testimony was relevant on the issue of the amount of LSD found, as going to the "with intent to sell" element of the crime. The defendant claims that Lt. Cupp had no knowledge or connection with this case and that his testimony was used to inflame the jury and had no probative value. In addition, defendant claims that Lt. Cupp was a surprise witness in that his name had not been provided to defense counsel pursuant to the trial court's discovery order.

■■■ First, on the issue of whether Lt. Cupp should have been allowed to testify because he was a surprise witness, we find no abuse of the trial court's discretion. The trial judge heard arguments prior to allowing the testimony and ruled that the defendants were not unduly prejudiced by the State's failure to provide his name prior to trial. Defense counsel had an opportunity to interview Lt. Cupp the day before he testified. Also, given the nature of his testimony (that 3000 hits of LSD was much, much more than someone would have had for personal use and that it would not take very much of the substance to produce an altered state in a person), we do not see that defense counsel could have refuted this testimony had his name been provided earlier.

Further, the record is sufficient to show Lt. Cupp's expertise in the matters to which he testified, and his testimony was relevant on the "intent to sell" element of the crime. This issue is overruled.

Defendant claims that section 39–6–417(c)(1)(D) of the Tennessee Code Annotated (Supp.1986) is vague and overbroad. The statute reads as follows:

> [I]t shall be unlawful and shall constitute a Class X felony for a person to knowingly manufacture, deliver, sell or possess with intent to manufacture, deliver or sell ... the following controlled substances in the following amounts: ... (D) Five (5) grams or more of any substance containing lysergic acid diethylamide (LSD)....

The part of the statute specifically complained of is found in part (D). Defendant claims that the statute does not define exactly how much LSD must be in "any substance."

■■■ The fair-warning requirement embodied in the due process clause prohibits holding an individual "criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). A statute fails the due process requirements if it is so vague and standardless that the public is uncertain of the conduct prohibited or if it leaves judges and jurors

free to decide, without any legally fixed standards, what is prohibited and what is not in any given case. *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).

■ The meaning of the statutory provision in this case is clear and unambiguous. A person of ordinary intelligence would have no difficulty in discerning the proscribed activity.

Further, given the nature of the drug LSD, it is necessary that the statute not require a particular weight of the pure substance. LSD is rarely, if ever, sold in the "street" marketplace in its pure form. It is ordinarily sold in tablets, on dots of paper, or on some other agent. The dosage is measured in micrograms. Thus, it would be impossible to define with any precision the exact weight of pure LSD which constitutes criminal possession. Rather, it is the weight of the substance (agent) that can be defined, and the legislature has done so in the statute.

For the above reasons, we do not find the language of section 39–6–417(c)(1)(D) of the Tennessee Code Annotated to be unconstitutionally vague or overbroad.

The defendant next alleges that he was denied a proper defense due to inadequate pretrial preparation on the part of his trial counsel. The defendant claims that his trial counsel did not confer with him an adequate number of times to discover evidence that could have been used in his defense.

■ The United States Supreme Court has recently defined a two-part test to determine if counsel's assistance was so defective as to require a reversal. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984). First, the defendant must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment, and second, he must show that the defective performance affected the outcome of the trial.

■ Specifically, the defendant claims that his trial counsel failed to discover the money order he received in Detroit on the day of his arrest and the friend he was visiting in Detroit, both of which were critical on the issue of suppression of the drugs seized. However, the record shows that at the suppression hearing, the Detroit friend was called to testify by defendant's counsel, and the money order was introduced as an exhibit. Thus, defendant's claims to the contrary, it appears that defense counsel was aware of and prepared to use this evidence. Defendant has failed to show any lack of effective assistance of counsel and this issue is overruled.

Finally, defendant argues that the evidence was insufficient to support his convictions, and that the trial court should have granted his motion for judgment of acquittal. The evidence is to be viewed in the light most favorable to the State to determine if any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Defendant's convictions stem from the search of the house at 928 Dartmouth Street. Defendant claims that he did not reside at that address, and therefore, the jury erred in finding him to be the owner of the drugs confiscated in the search.

■ If it can be shown that a defendant was an owner or had possession of the premises, an inference is created that the defendant had control over or possession of the contraband. *Armstrong v. State,* 548 S.W.2d 334, 336 (Tenn.Cr.App.1976). It is a jury question as to ownership of drugs based on occupancy. *Armstrong,* at 337.

■ The State produced evidence which showed that the electricity for the premises was in defendant's name. Also, defendant was found in the bathroom taking a bath at the time of the search. Based on this evidence, it was reasonable for the jury to have found the defendant in control or possession of the premises and thus, in control or possession of the controlled substances.

The evidence is sufficient to support the defendant's convictions. There was no basis for the trial court to grant the defendant's motion for judgment of acquittal.

We find no merit to any of the defendant's issues. The judgments of the trial court are affirmed.

DAUGHTREY and SCOTT, JJ., concur.