IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 19, 2017

**ELZA EVANS III v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-B-1806     Steve R. Dozier, Judge**

———————————————————

**No. M2016-02332-CCA-R3-PC**

———————————————————

The Petitioner, Elza Evans III, appeals the post-conviction court's denial of his petition for post-conviction relief in which he challenged his convictions for aggravated burglary, aggravated robbery, and two counts of especially aggravated kidnapping and his effective sentence of two consecutive terms of life imprisonment without the possibility of parole. On appeal, the Petitioner contends that trial counsel rendered ineffective assistance at trial and on appeal. Upon reviewing the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

David M. Hopkins, Murfreesboro, Tennessee, for the appellant, Elza Evans III.

Herbert H. Slatery III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; Glenn R. Funk, District Attorney General; and J. Wesley King, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTUAL AND PROCEDURAL HISTORY**

The Petitioner and his co-defendants, Mr. Gregory Mathis, Mr. Danny Lee Sams, and Ms. Emily Catherine Turner, were indicted on charges of aggravated burglary of Mr. Terry Becker's home, aggravated robbery of Mr. Becker, especially aggravated kidnapping of Mr. Becker, and especially aggravated kidnapping of Ms. Lisa Lewis. Mr.

Sams and Ms. Turner were also charged with forgery. Mr. Sams pled guilty to various offenses prior to trial. The Petitioner and the remaining co-defendants were tried together and were convicted as charged. A summary of the evidence presented at trial is included in this court's opinion on direct appeal. *See State v. Gregory Mathis and Elza Evans*, No. M2011-01096-CCA-R3-CD, 2013 WL 4774130, at *1-5 (Tenn. Crim. App. Sept. 5, 2013), *perm. app. denied* (Tenn. Dec. 12, 2013).

The trial court found that the Petitioner was a repeat violent offender and sentenced him to life imprisonment without the possibility of parole for each of his especially aggravated kidnapping convictions. The trial court also sentenced the Petitioner as a persistent offender to fourteen years for aggravated burglary and twenty-six years for aggravated robbery. The trial court ordered the Petitioner to serve his sentences for the especially aggravated kidnapping convictions consecutively to each other and concurrently to his sentences for the remaining convictions, for an effective sentence of two lifetimes without the possibility of parole. This court upheld the Petitioner's convictions and sentences on direct appeal. *See id.* at *1.

The Petitioner filed a pro se petition for post-conviction relief in which he alleged that trial counsel was ineffective at trial and on appeal. Following the appointment of counsel, the Petitioner filed an amended petition. Mr. Mathis also filed a petition for post-conviction relief, and the post-conviction court held a joint hearing on the petitions. Following the hearing, the post-conviction court entered an order denying relief to both the Petitioner and Mr. Mathis. Because this appeal only involves the denial of the Petitioner's post-conviction petition, we summarize the evidence presented during the hearing relevant to the claims raised by the Petitioner in this appeal.

Mr. Mathis testified that when the offenses occurred, the Petitioner did not know what was happening and did not have a weapon. Mr. Mathis stated that he had a weapon and forced the Petitioner to commit the home invasion. Mr. Mathis maintained that he had been willing to testify on the Petitioner's behalf at trial but that the Petitioner's counsel never contacted him. Mr. Mathis acknowledged that had he testified at trial, he would have admitted that he committed a robbery.

Mr. Mathis recalled that during the trial, he, his counsel, the Petitioner, and the Petitioner's counsel met in a room and discussed Mr. Mathis's testifying on behalf of the Petitioner. Following the meeting, Mr. Mathis's counsel informed him that the State would question him about his prior criminal convictions if he testified. Mr. Mathis acknowledged that he decided not to testify but maintained that his counsel talked him out of testifying.

On cross-examination by the State, Mr. Mathis testified that he had known the Petitioner since the age of fifteen. Mr. Mathis corresponded with the Petitioner through letters both prior to and after the trial, and they remained friends. Mr. Mathis acknowledged that he had three prior aggravated robbery convictions, a felony theft conviction, and a conviction for unlawfully possessing a firearm.

Mr. Mathis testified that he, Ms. Turner, and Mr. Sams planned the offenses and drove by Mr. Becker's house in preparation for the offenses. Mr. Mathis said Mr. Sams and Ms. Turner did not know the Petitioner. The Petitioner arrived at Nashville to celebrate his birthday the night before the home invasion and stayed with Mr. Mathis. Mr. Mathis maintained that he did not inform the Petitioner of the planned home invasion when the Petitioner arrived. The Petitioner and Mr. Mathis spent the evening drinking alcohol.

Mr. Mathis stated that he purchased duct tape, a mask, and wigs in preparation for the home invasion. He could not recall when he purchased the items or whether he purchased the items before the Petitioner arrived. Mr. Mathis stated that he had the items at his home the evening before the home invasion.

The following day, Mr. Mathis drove his neighbor's vehicle and parked down the street from Mr. Becker's home, and he and the Petitioner walked to Mr. Becker's home. Mr. Mathis had a bag of items with him. Mr. Mathis said that he jumped over a fence in Mr. Becker's backyard and that the Petitioner followed him. Mr. Mathis testified that he had two guns on his person. He stated that once they reached Mr. Becker's door, he told the Petitioner of the plan and instructed the Petitioner to "follow his lead" although the Petitioner said he did not wish to participate. Mr. Mathis said he produced a gun, "kind of forced it on" the Petitioner, and made the Petitioner put on a wig. Mr. Mathis denied giving the Petitioner a gun and maintained that he forced the Petitioner to participate in the home invasion. When the State questioned Mr. Mathis about the details of the events, he responded, "[Y]ou're trying [to] get me to go into specific … detail. I can't do all of that." Mr. Mathis maintained that although he had two guns on his person, he produced only one gun during the home invasion. He stated that Mr. Becker's testimony that the perpetrators both had guns was incorrect.

Mr. Mathis testified that while he told his counsel that the Petitioner did not have anything to do with the home invasion, Mr. Mathis did not believe that he told his counsel that he forced the Petitioner to participate or that he pointed a gun at the Petitioner.

Mr. Mathis admitted pointing a gun at Mr. Becker and forcing him to write the checks. Mr. Mathis acknowledged that he and the Petitioner remained in Mr. Becker's

home for a significant period of time. After Mr. Sams called Mr. Mathis and instructed him to leave the home, Mr. Mathis told the Petitioner that they needed to leave, and the Petitioner exited the home first followed by Mr. Mathis. Once they saw the police officers, they fled in opposition directions. Mr. Mathis said he dropped one of the guns and fled but kept the other gun on his person. The officers apprehended them and arrested them.

In response to questioning by the Petitioner's post-conviction counsel, Mr. Mathis testified that he did not tell the Petitioner about the planned home invasions before the Petitioner arrived in Nashville. To Mr. Mathis's knowledge, the Petitioner had not met any of the other co-defendants prior to the offenses. Mr. Mathis said that he and the Petitioner consumed a large amount of alcohol on the night prior to the home invasion and that the Petitioner could have been "hungover" the next day. Mr. Mathis stated that during the twenty- to twenty-five-minute drive to Mr. Becker's home, Mr. Mathis did not inform the Petitioner of the plans. Mr. Mathis initially testified that the Petitioner voluntarily entered the home but then stated that "it was forced" and that the Petitioner did not want to be involved in the offenses. Mr. Mathis did not recall what he said to the Petitioner to make him enter the home. Mr. Mathis later testified that he pointed a gun at the Petitioner and instructed him to "follow [his] lead."

Mr. Mathis testified that prior to trial, he told the Petitioner that he wanted to speak to the Petitioner's counsel. Mr. Mathis believed that he also told his counsel that he wanted to speak to the Petitioner's counsel. Mr. Mathis said he told his counsel that he was willing to testify that the Petitioner did not know anything about the offenses. Contrary to Mr. Mathis's prior testimony during the post-conviction hearing, Mr. Mathis stated he told his counsel that the Petitioner was forced into committing the offenses. Mr. Mathis then waited on the Petitioner's counsel to contact him.

Ms. Emily Turner testified that the Petitioner's name was never mentioned during her discussions with the other co-defendants prior to the offenses. She also said that the first time she had even seen the Petitioner was at Mr. Becker's home.

The Petitioner testified that he "just happened to get caught up" in the offenses. He said he told trial counsel that his fiancée had received a letter from Mr. Mathis in which Mr. Mathis stated that he informed his counsel that he forced the Petitioner to commit the home invasion. The Petitioner stated that Mr. Mathis wrote him additional letters, maintaining that he told his attorney that the Petitioner did not know that the home invasion was to occur. The Petitioner also stated that he requested trial counsel to interview Mr. Mathis and that Mr. Mathis was willing to sign an affidavit regarding the Petitioner's lack of involvement. The Petitioner maintained that trial counsel failed to interview Mr. Mathis or speak to Mr. Mathis's attorney.

- 4 -

The Petitioner stated that he asked trial counsel to file a motion to sever his trial from the trials of his co-defendants because Mr. Mathis and Mr. Sams were willing to testify on his behalf at trial. The Petitioner explained that the majority of the evidence implicated his co-defendants and that he was merely present when the offenses occurred. He said the motion was untimely. During the hearing, trial counsel attempted to enter the Mr. Mathis's letter as an exhibit but was unable to do so because he failed to have it properly authenticated. The Petitioner believed that trial counsel would have been able to authenticate the letter had he interviewed Mr. Mathis or retained a handwriting expert.

The Petitioner recalled that trial counsel mentioned that the case would be his first jury trial but assured the Petitioner that he would adequately represent him. The Petitioner believed trial counsel did not have the experience necessary to represent him on the case and was not expending sufficient time and effort in preparing for the trial. He requested that trial counsel withdraw. The Petitioner stated that although trial counsel filed a motion to withdraw, the motion was untimely, and the trial court denied the motion.

The Petitioner believed trial counsel failed to adequately consult with him prior to trial. He was housed with the Tennessee Department of Correction (TDOC) pending trial. He said trial counsel met with him to discuss the case on no more than three or four occasions and briefly met with him during court appearances. He stated that trial counsel failed to attend a scheduled meeting with him the day before trial to discuss the defense strategy.

The Petitioner testified that while trial counsel provided him with a copy of the discovery materials from the State, trial counsel did not review the materials with him. The Petitioner then stated that he recalled "[n]o more than one meeting" during which they discussed the discovery materials. According to the Petitioner, trial counsel told him that the evidence leaned toward the Petitioner merely being present when the offenses occurred and that the jury likely would want to know the circumstances that led to the Petitioner's presence. The Petitioner instructed trial counsel to interview Mr. Mathis, who was willing to testify on his behalf.

The Petitioner did not testify at trial and maintained that trial counsel did not prepare him to testify. He informed trial counsel that he would testify at trial if Mr. Mathis did not do so because he needed to explain the circumstances that led to his presence at the crime scene. Trial counsel told the Petitioner that if he testified, the State would question him about his prior criminal record. The Petitioner stated that trial counsel believed that Mr. Mathis would testify at trial and informed the Petitioner that as a result, the Petitioner would not need to do so. The Petitioner did not learn that Mr. Mathis was not going to testify until shortly before the trial concluded. The Petitioner, trial counsel, Mr. Mathis, and Mr. Mathis's counsel met in a conference room to discuss

the matter, and Mr. Mathis stated that he would testify. The Petitioner maintained that he asserted his right to not testify believing that Mr. Mathis would testify. The Petitioner later learned that after the meeting, Mr. Mathis's counsel persuaded him to not testify. Trial counsel did not call Mr. Mathis as a witness at trial, and the Petitioner did not recall any discussion with trial counsel regarding whether they should call Mr. Mathis as a witness.

The Petitioner said that when he was arrested, he told officers that he was merely present when the offenses occurred and did not participate in committing the offenses. He also told officers that when Mr. Mathis informed him that they needed to leave, he grabbed a bag containing duct tape and other items that was on top of the washer or dryer and walked out of the house.

The Petitioner testified that during the jury selection, trial counsel failed to object to the composition of the jury. He said that no African-American people were on the jury and that the jury was comprised of elderly, Caucasian people similar to Mr. Becker. The Petitioner believed that as a result, the jury was more sympathetic to Mr. Becker.

The Petitioner testified that trial counsel failed to properly examine witnesses at trial. He explained that an officer's testimony that the safety on the guns was not engaged was inconsistent with the ballistics report and that trial counsel failed to properly cross-examine the officer about the ballistics report. The Petitioner also believed that trial counsel failed to properly question Mr. Sams at trial. According to the Petitioner, Mr. Sams testified, in response to questioning by trial counsel, that he did not know the Petitioner and that the Petitioner did not attend any of the meetings during which the offenses were planned. After the State questioned Mr. Sams about a plea agreement that was contingent upon his testimony at trial, Mr. Sams implied that the Petitioner was to receive proceeds from the offenses.

The Petitioner noted that trial counsel failed to include the jury instructions and the transcripts from the severance hearing, the sentencing hearing, and the hearing on the motion for new trial in the appellate record. The Petitioner stated that as a result, many issues were waived on appeal. He recalled that during the hearing on his motion for new trial, trial counsel requested permission to withdraw as counsel and asked that another attorney be appointed for purposes of appeal. According to the Petitioner, trial counsel stated that he did not know how proceed with an appeal and that he did not believe that the Petitioner needed to appeal his convictions. The Petitioner maintained that trial counsel's statement was omitted from the transcript of the hearing on the motion for new trial.

The Petitioner noted that trial counsel raised multiple issues during the hearing on the motion for new trial that were not raised in the written motion for new trial. The trial court instructed trial counsel to reduce the additional issues in writing following the hearing. The Petitioner understood that if the issues were not included in the initial motion, they were deemed waived on appeal.

On cross-examination, the Petitioner testified that he and Mr. Mathis grew up together and remained friends. He said that while they continued to write letters to each other following their convictions, he denied that the letters detailed specific information about their case. He acknowledged that they discussed "certain things" about the case when they saw each other during court appearances.

The Petitioner said that once they arrived at Mr. Becker's home, Mr. Mathis produced a mask and a bandanna and stated that they were going inside the house. The Petitioner stated that after he refused, Mr. Mathis produced a gun and said, "[Y]ou ain't got no choice, let's go." The Petitioner denied that Mr. Mathis told him about the home invasion while traveling to Mr. Becker's home and said he did not know why they were there. He acknowledged that he jumped over the Mr. Becker's fence before Mr. Mathis. The Petitioner denied possessing a gun while inside the house and said that Mr. Becker's testimony that both men possessed a gun was false.

The Petitioner denied participating in the commission of the offenses and stated that while inside the house, he was scared and did not feel free to leave. He and Mr. Mathis remained inside the house for approximately forty-five minutes, and the Petitioner never yelled for help or asked Mr. Mathis to stop. After Mr. Mathis received a call instructing him to leave, the Petitioner retrieved a bag that Mr. Mathis had brought into the house and left the house before Mr. Mathis. The Petitioner and Mr. Mathis fled upon seeing police officers. The Petitioner did not inform officers that he was forced inside the house. He acknowledged that he told the officers that as he was fleeing, he threw down a gun, a bandanna, and a wig. He said that he initially denied possessing a gun but that after the officers continued "badgering" him, he told them "in [j]est" that he discarded the gun while fleeing.

The Petitioner testified that both before and during trial, he and trial counsel discussed whether the Petitioner should testify. Trial counsel advised him against testifying because the State would question him about his prior criminal record. The Petitioner acknowledged that he had prior convictions for second degree murder, facilitation of attempted first degree murder, especially aggravated robbery, unlawful possession of a weapon, and third degree burglary.

- 7 -

Mr. Mathis's counsel testified that he believed that the State had a strong case against Mr. Mathis. He said there was evidence that during the commission of the offenses, one of the suspects was the coordinator who instructed the other suspect on what to do. Mr. Mathis's counsel stated that because both suspects wore masks during the offenses, he hoped to convince the jury that the Petitioner, and not Mr. Mathis, was the coordinator and that Mr. Mathis would be convicted of a lesser-included offense as a result. Mr. Mathis's counsel stated that based upon the items that officers found in Mr. Mathis's possession, he did not think that the jury would believe that Mr. Mathis was merely present and did not participate in the offenses.

Mr. Mathis's counsel recalled that Mr. Mathis told him sometime before trial that the Petitioner was unaware of the plan to commit the offenses and that Mr. Mathis felt "some sense of duty" to assist the Petitioner at trial. Mr. Mathis's counsel never heard Mr. Mathis state that the Petitioner's presence was the result of duress or that Mr. Mathis produced a gun and forced the Petitioner into the house. Rather, Mr. Mathis led his counsel to believe that he convinced the Petitioner to commit the offenses with him at the last minute and "sort of sprung the idea" on the Petitioner. Mr. Mathis also said the Petitioner was essentially placed in a position where he almost had to participate in the offenses because he did not know anyone who would transport him away from the scene.

Mr. Mathis's counsel stated that while he strongly discouraged Mr. Mathis from testifying at trial, it was ultimately Mr. Mathis's decision to not testify. Mr. Mathis's counsel told him that if he testified, the State would question him about his prior criminal record and that his testimony would not help him as he would be testifying that he committed the offenses for which he was charged. Mr. Mathis's counsel said that had Mr. Mathis told him that he forced the Petitioner to participate in the offenses, it would have made it all the more likely that counsel would have advised Mr. Mathis against testifying because he would essentially be admitting to the commission of an additional crime.

On cross-examination, Mr. Mathis's counsel testified that while he spoke to trial counsel, he did not recall whether he told trial counsel about Mr. Mathis's statements or whether trial counsel requested permission to meet with Mr. Mathis. Mr. Mathis's counsel stated that he would not have allowed trial counsel to meet with Mr. Mathis. Mr. Mathis's counsel stated that Mr. Mathis appeared to believe that if the Petitioner was not involved in the planning stages, the Petitioner's culpability would be negated or minimized.

Trial counsel has been licensed to practice law since 2008 and has practiced primarily in the area of criminal defense. He originally represented the Petitioner in general sessions court and was appointed to represent him following the indictment. He

filed a motion to withdraw at the Petitioner's request, and the trial court denied the motion. Trial counsel recalled informing the trial court during the hearing that the Petitioner's case was his first felony trial. He had a prior jury trial involving misdemeanor charges.

Trial counsel testified that he reviewed the discovery from the State on multiple occasions and met with the Petitioner in preparing for trial. The Petitioner was in TDOC custody during the majority of the period following his arrest and before trial. Trial counsel recalled meeting with the Petitioner once or twice for a few hours while the Petitioner was housed in a local facility. While trial counsel believed he met with the Petitioner when the Petitioner was housed in a prison near Memphis, he said that he could have only met with the Petitioner once at the facility and that he spent most of the day with the Petitioner.

The State filed a notice that it was seeking to sentence the Petitioner to life without the possibility of parole. Trial counsel stated he discussed the sentence with the Petitioner and informed him that any conviction for a violent offense would result in a sentence of life without the possibility of parole. On the eve of trial, trial counsel sent an email to the prosecutor proposing a plea resulting in a twenty-year sentence at 100%. Trial counsel believed that he had discussed the matter with the Petitioner and that the Petitioner had agreed to accept the plea. However, the prosecutor rejected the offer and never offered a plea agreement.

Trial counsel testified that from the time of their first meeting, the Petitioner maintained that Mr. Mathis coerced him, pointed a gun at him, and essentially stated that the Petitioner did not have a choice but to participate in the home invasion. Trial counsel said that he spoke to Mr. Mathis's counsel and made multiple attempts to meet with Mr. Mathis but that Mr. Mathis's counsel denied his requests. Trial counsel did not know whether Mr. Mathis's counsel ever discussed the possibility of a meeting with Mr. Mathis.

Trial counsel testified that since he was unable to obtain Mr. Mathis's testimony, he believed that the most viable defense theory was that the Petitioner was a facilitator rather than the primary actor. Trial counsel noted that based upon the victims' testimony, one of the perpetrators was not as involved in the commission of the offenses as the other perpetrator. Mr. Sams stated he did not know the Petitioner and had never previously seen him. Trial counsel believed that the victims' testimonies regarding the number of guns involved and who possessed the guns were inconsistent. Trial counsel argued at trial that the Petitioner did not have any of the checks or the debit card on him and that he was only standing around and taking orders from Mr. Mathis.

Trial counsel filed a motion to sever the Petitioner's trial from the trial of his co-defendants. Trial counsel agreed that he filed the motion "late in the game," but he did not agree that the motion was untimely. While he had a "somewhat vague letter" from Mr. Mathis, he spent time trying to obtain a recording or affidavit from Mr. Mathis because he believed those items would be more beneficial. Trial counsel attempted to enter Mr. Mathis's letter as an exhibit during the severance hearing and agreed that he failed to properly authenticate the letter. He stated that he would have been able to authenticate the letter had he been more familiar with the procedural rules. He noted that the letter was not signed as "Greg Mathis" but as a nickname. Nevertheless, he believed he could have presented the Petitioner as a witness during the severance hearing to testify that he received the letter. Trial counsel did not know whether the trial court would have granted the severance motion had the letter been admitted as an exhibit. He believed that had the Petitioner's trial been severed, he could have called Mr. Mathis to testify and that Mr. Mathis's testimony could have possibility resulted in an acquittal or furthered a facilitation theory.

Trial counsel did not have any recollection about a conversation with the Petitioner regarding whether he should testify at trial. He said he was likely hesitant to have him testify and likely informed the Petitioner that the State would question him about his prior convictions if he chose to testify. Trial counsel believed that testimony regarding the events would have been stronger coming from Mr. Mathis than the Petitioner. Trial counsel stated that in hindsight, he would have advised the Petitioner that he did not have anything to lose by testifying and that he might as well tell the jury his side. Trial counsel also denied telling the Petitioner that he could not testify. He explained that while he likely advised the Petitioner against testifying, it was the Petitioner's decision not to testify.

Trial counsel testified that while he had no specific recollection about his communication with the Petitioner during jury selection, he generally communicated with his clients throughout the jury selection process. Trial counsel also consulted with counsel for the co-defendants to ensure that they were not striking the same jurors in an effort to maximize their number of strikes. He recalled striking some members of the jury pool and discussing the possibility of a *Batson* challenge with Ms. Turner's counsel. They decided against a *Batson* challenge, and trial counsel stated that in hindsight, he would have issued a *Batson* challenge.

With regard to trial counsel's cross-examination of the police officer about whether the safety on the guns was engaged, trial counsel acknowledged that the police report indicated that the safety on each gun was engaged. However, trial counsel believed "whether a gun is on safety or not [was a] very small detail, but it was addressed." In questioning Mr. Sams at trial, trial counsel stated that he obtained the

information that he needed from Mr. Sams and then ended his examination. It was during cross-examination by the State that Mr. Sams mentioned a friend of Mr. Mathis was to be involved. Since Mr. Sams had testified that he did not know the Petitioner, trial counsel was unaware of any additional questioning that was necessary to establish this point.

Trial counsel generally agreed with the Petitioner's testimony regarding the appeal. He said the Petitioner's case was his first appeal and that he had to learn the appellate process during his representation of the Petitioner. He encountered issues with obtaining the transcripts of the various hearings. He raised the issue of severance on appeal. He noted that he did not present any testimony during the severance hearing and was not able to enter the letter as an exhibit, so he did not believe the issue was as "strong as it could have been."

On cross-examination, trial counsel testified that he would not go as far as to say that Mr. Mathis's letters supported the Petitioner's claim that he was coerced into committing the offenses, but trial counsel believed the letters indicated that the Petitioner was unaware of the planned home invasion. Trial counsel did not believe that the letters specifically said that Mr. Mathis pointed a gun at the Petitioner. Rather, the letters indicated that Mr. Mathis wanted to assist the Petitioner in distancing himself from the planning and involvement in the offenses.

Trial counsel recalled that the basis for the motion to sever the trials was that trial counsel wanted to call Mr. Mathis as a witness to testify on the Petitioner's behalf. An issue arose regarding the timeliness of filing the transcript of the severance hearing in the trial court to include in the appellate record, and trial counsel acknowledged that both he and the court reporter who prepared the transcript were to blame for the issue. Trial counsel noted that because the transcript of the severance hearing was not included in the appellate record, the issue was waived on appeal. Because trial counsel was unable to enter Mr. Mathis's letter as an exhibit during the severance hearing, he did not know whether his argument regarding severance would have been successful on appeal had he included the transcript of the hearing in the appellate record.

Trial counsel testified that had his motion to sever the Petitioner's trial been granted or had Mr. Mathis testified during the trial, trial counsel would have pursued a theory of defense that the Petitioner was not involved in the commission of the offenses. Trial counsel stated that because the motion to sever was denied and Mr. Mathis did not testify at trial, the defense theory was that the Petitioner was merely a facilitator rather than a primary actor.

- 11 -

Trial counsel did not recall a meeting between him, the Petitioner, Mr. Mathis, and Mr. Mathis's counsel at trial regarding whether Mr. Mathis would testify or whether he expected Mr. Mathis to testify. Mr. Mathis waived his right to testify during a jury-out hearing. Trial counsel did not attempt to call Mr. Mathis as a witness at trial to determine whether Mr. Mathis would testify or assert his right against self-incrimination. Trial counsel did not know whether Mr. Mathis would have changed his mind since he already decided not to testify. Trial counsel stated that in hindsight, he would have been more forceful about pursuing the issue.

Trial counsel did not recall that the jury was composed primarily of elderly Caucasian people but acknowledged that the jury was devoid of any minorities. He stated that he likely followed the lead of the defense attorney of one of the co-defendants by not making a *Batson* challenge. He also stated that in hindsight, a *Batson* challenge could have been raised.

Trial counsel stated that during the hearing on the motion for new trial, he raised additional issues that were not included in the written motion for new trial. He requested that the trial court grant him leave to reduce the additional issues to writing, and the trial court granted his request.

Following the hearing, the post-conviction court entered an order denying the Petitioner's post-conviction petition. The post-conviction court found that trial counsel was not deficient in failing to interview Mr. Mathis. The court accredited trial counsel's testimony that he attempted to interview Mr. Mathis but that Mr. Mathis was represented by counsel who denied trial counsel's requests for an interview. The post-conviction court also found that trial counsel's failure to interview Mr. Mathis did not result in prejudice, noting that Mr. Sams testified on behalf of the Petitioner at trial that the Petitioner was not involved in the planning of the offenses.

The post-conviction court rejected the Petitioner's claim that trial counsel failed to consult with him prior to trial and failed to provide him with information that would have aided in his defense. The post-conviction court accredited trial counsel's testimony that he met with the Petitioner multiple times, had lengthy meetings with him, and discussed sentencing issues and trial strategy. As a result, the post-conviction court found that trial counsel was not deficient and that any deficiency did not result in prejudice.

The post-conviction court also rejected the Petitioner's claims that trial counsel was ineffective in failing to timely file pretrial motions and in failing to include Mr. Mathis's letters as exhibits during the severance hearing. The post-conviction court found that even if trial counsel had entered the letters as exhibits during the severance hearing, severance of the Petitioner's trial was not appropriate. The post-conviction court

noted that denying a motion to sever trials when the defendant claims that a co-defendant would have given exculpatory testimony at a separate trial but invoked his right against self-incrimination during a joint trial did not amount to an abuse of discretion.

The post-conviction court found that the Petitioner failed to present any proof to support his claim that trial counsel was deficient in failing to raise objections during jury selection or that any deficiency resulted in prejudice. The post-conviction court noted that trial counsel struck eight jurors for various reasons during the jury selection. The post-conviction court also found that the Petitioner failed to present any proof to support his claim that trial counsel was ineffective in failing to timely raise issues in the motion for new trial. The post-conviction court noted that on direct appeal, this court addressed the issue of the Petitioner's dual convictions for especially aggravated kidnapping and aggravated robbery, which was an issue raised by trial counsel for the first time during the hearing on the motion for new trial.

## ANALYSIS

The Petitioner maintains that trial counsel was ineffective (1) in failing to adequately prepare for trial; (2) during jury selection; (3) in failing to properly cross-examine and discredit witnesses; (4) in failing to present Mr. Mathis or the Petitioner as witnesses at trial; and (5) in failing to include the transcripts of the hearing on the motion for new trial, the sentencing hearing, and the severance hearing in the appellate record. The State responds that the Petitioner has failed to establish that trial counsel was ineffective at trial and on appeal. We agree with the State.

A post-conviction petitioner must establish that his conviction or sentence is void or voidable due to the abridgment of any constitutional right. T.C.A. § 40-30-103. The petitioner bears the burden of proving the allegations of fact in the petition by clear and convincing evidence. T.C.A. § 40-30-110(f); *Ward v. State*, 315 S.W.3d 461, 465 (Tenn. 2010). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). The findings of fact made by a post-conviction court are conclusive on appeal unless the evidence preponderates against them. *Ward*, 315 S.W.3d at 465. This court may not substitute its own inferences for those drawn by the post-conviction court, and questions concerning the credibility of witnesses, the weight and value of the evidence, and the factual issues raised by the evidence are to be resolved by the post-conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). A claim of ineffective assistance of counsel raises a mixed question of law and fact which this court reviews de novo. *Fields v. State*, 40 S.W.3d 450, 457–58 (Tenn. 2001). The trial court's

conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *Id*.

Both the Sixth Amendment to the United States Constitution and article I, section 9 of the Tennessee Constitution guarantee the accused the right to counsel. This right has been defined as the right to the "'reasonably effective'" assistance of counsel, or assistance "'within the range of competence demanded of attorneys in criminal cases.'" *Pylant v. State*, 263 S.W.3d 854, 868 (Tenn. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The overall standard of effectiveness is "'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (quoting *Strickland*, 466 U.S. at 686).

In order to establish that he received the ineffective assistance of counsel, a petitioner must show both that his lawyer's performance was deficient and that the deficiency resulted in prejudice. *Pylant*, 263 S.W.3d at 868. Deficiency can be shown if the petitioner demonstrates that his attorney's services were below an objective standard of reasonableness under prevailing professional norms. *Id*. A petitioner must demonstrate deficiency by "'showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (quoting *Strickland*, 466 U.S. at 687). A reviewing court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. at 277. The court must presume that counsel's acts might be "'sound trial strategy,'" and strategic decisions, when made after a thorough investigation, are "'virtually unchallengeable.'" *Id*. (quoting *Strickland*, 466 U.S. at 689, 690).

In determining prejudice, the post-conviction court must decide whether there is a reasonable probability that, but for the errors, the result of the proceeding would have been different. *Grindstaff*, 297 S.W.3d at 216. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Honeycutt*, 54 S.W.3d at 768 (quoting *Strickland*, 466 U.S. at 694). "[T]he Petitioner must establish that his counsel's deficient performance was of such a degree that it deprived him of a fair trial and called into question the reliability of the outcome." *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007). A claim may be denied for failure to prove either deficiency or prejudice, and a court need not address both prongs if the petitioner has failed to establish either deficiency or prejudice. *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

## A. Trial Preparation

The Petitioner argues that trial counsel was ineffective in failing to adequately meet with the Petitioner, failing to interview Mr. Mathis prior to trial, and failing to properly enter letters written by Mr. Mathis as exhibits during the severance hearing. However, the post-conviction court credited trial counsel's testimony that he met with the Petitioner on multiple occasions and discussed trial strategy, defense theories, and sentencing issues. They met while the Petitioner was housed locally and in a TDOC facility and during court appearances. Trial counsel reviewed the discovery materials from the State on multiple occasions with the Petitioner. Based on trial counsel's investigation, he developed a defense theory that the Petitioner was merely a facilitator rather than a primary actor and pursued that defense theory at trial.

Trial counsel reviewed letters written by Mr. Mathis and sought permission from Mr. Mathis's counsel on multiple occasions to interview Mr. Mathis, but Mr. Mathis's counsel denied trial counsel's requests. Our Rules of Professional Conduct in effect at the time prohibited trial counsel from communicating with Mr. Mathis about the case absent consent from Mr. Mathis's attorney or authorization by law. *See* Tenn. Sup. Ct. R. 8, RPC 4.2 (2009).[1] This prohibition applied regardless of whether Mr. Mathis initiated or consented to the communication. *See id.* cmt. 2 (2009). Accordingly, the Petitioner has failed to present evidence establishing that trial counsel was deficient in his trial preparations or in failing to interview Mr. Mathis.

The Petitioner maintains that trial counsel failed to properly enter Mr. Mathis's letters into evidence during the severance hearing and that had trial counsel done so, the trial court would have granted the motion to sever the Petitioner's trial from his co-defendants' trial. The transcript of the hearing on the motion to sever was not included in the appellate record on direct appeal, and the Petitioner failed to include the transcript in the appellate record in this appeal. The Petitioner also failed to enter Mr. Mathis's letters as exhibits during the post-conviction hearing, and the letters are not included in the appellate record. Moreover, as this court noted on direct appeal, "it 'is not an abuse of the trial court's discretion to refuse to sever when the defendant claims that a co[-]defendant would have given exculpatory testimony at a separate trial but the co[-]defendant invoked the [F]ifth [A]mendment at a joint trial.'" *Gregory Mathis and Elza Evans*, 2013 WL 4774130, at *7 (quoting *State v. Ash*, 729 S.W.2d 275, 279 (Tenn. Crim. App. 1986)) (alterations in original). Accordingly, the Petitioner has failed to

---

[1] Under the current rule, an attorney is prohibited from communicating about the subject of the representation with a person, who the attorney knows to be represented by another attorney absent consent from the other attorney, authorization by law, or a court order. *See* Tenn. Sup. Ct. R. 8, RPC 4.2 (Effective Jan. 1, 2011).

establish that trial counsel was deficient in failing to enter Mr. Mathis's letters into evidence during the severance hearing or that any deficiency resulted in prejudice.

## B. Jury Selection

The Petitioner asserts that trial counsel was ineffective in failing to issue a challenge to the racial make-up of the jury under *Batson v. Kentucky*, 476 U.S. 79 (1986). The Petitioner also asserts that the jury was "comprised of persons so similar to the victim that they could have been unfairly biased in favor of Mr. Becker" and that as a result, trial counsel was ineffective in failing to select an unbiased jury.

The Petitioner failed to include the transcript of the jury selection in the appellate record and did not present any evidence supporting his claim that the jury was "comprised of persons … similar to the victim." While the issue was not raised on direct appeal, the Petitioner argued during the hearing on the motion for new trial that he was denied his right to a trial by a jury of his peers because he is African American and the jurors were Caucasian. The trial court, in denying the Petitioner's motion for new trial, acknowledged that no African Americans were in the jury. The trial court identified seven African-Americans who were excused from the jury. Of those seven people, the trial court identified one as being challenged by Ms. Turner and two as being challenged by the State. The trial court noted that the two African American jurors challenged by the State both had siblings who were convicted of crimes and were serving sentences in prison. The trial court found that there was no showing that the State's exclusion of the African Americans from the jury was "illegal."

In *Batson*, the United States Supreme Court held that the State's exclusion of potential jurors based solely upon race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson*, 476 U.S. at 89. The three perquisites that must be met to establish a *Batson* violation are: (1) the defendant must establish a prima facie case of purposeful discrimination; (2) the State must be given the opportunity to rebut the prima facie case by offering a race-neutral explanation for the exercise of the preemptory challenge; and (3) the trial court must determine whether the defendant has established purposeful discrimination. *Id.* at 96-98. The State's race-neutral explanation must be reasonable and specific but need not be persuasive. *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995); *see State v. Hugueley*, 185 S.W.3d 356, 368 (Tenn. 2006). "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race-neutral." *Purkett*, 514 U.S. at 768 (citations omitted); *see Hugueley*, 185 S.W.3d at 368. The trial court, however, must consider the explanation in light of all evidence to ensure that the explanation is not pretextual. *Miller-El v. Dretke*, 545 U.S. 231, 251-52 (2005); *Hugueley*, 185 S.W.3d at 369.

The Petitioner has failed to present any evidence during the post-conviction hearing that contradicts the trial court's findings during the hearing on the motion for new trial and supports the Petitioner's claim that trial counsel was ineffective in failing to issue a *Batson* challenge. Accordingly, the Petitioner has failed to establish that trial counsel was deficient in failing to challenge the make-up of the jury and that any deficiency resulted in prejudice.

### C. Cross-Examination of Witnesses

The Petitioner claims that trial counsel was ineffective in failing to properly question Officer William Kirby and Mr. Sams at trial and in failing to "emphasize to the jury that neither police officers nor Ms. Lewis saw [the Petitioner] with a weapon, facts that would discredit Mr. Becker's testimony that Appellant was armed, and further illustrate his law of involvement."

At trial, Officer Kirby, who documented and processed the scene, testified that he collected a .380 caliber pistol and a nine millimeter pistol outside of the residence where the offenses occurred. The .380 caliber pistol had seven rounds in the magazine and one round in the chamber, and the nine millimeter pistol had fourteen rounds in the magazine and one round in the chamber. On cross-examination, Officer Kirby testified that the safeties on both guns were not engaged when he collected them. Trial counsel utilized a report to question Officer Kirby about whether the safeties on the guns were engaged, and Officer Kirby testified that the report indicated that the safeties on both guns were not engaged.

The Petitioner argues that trial counsel failed to adequately cross-examine Officer Kirby about the police report which showed that the safeties of the guns were engaged when recovered. According to the Petitioner, Officer Kirby's testimony that the safeties were not engaged allowed the jury to infer that the victim was in greater danger or that the Petitioner and Mr. Mathis were more dangerous. However, the police report was not entered as an exhibit at trial or during the post-conviction hearing and, therefore, is not included in the appellate record. Absent the report, we cannot determine whether Officer Kirby's testimony at trial was actually inconsistent with the police report as alleged by the Petitioner. Accordingly, the Petitioner has failed to establish that trial counsel was deficient. We also conclude that any deficiency did not result in prejudice in light of the strong evidence of guilt presented at trial.

The Petitioner asserts that trial counsel was ineffective in failing to cross-examine Mr. Sams "about his change in testimony from [the Petitioner's] not being involved to his wanting financial reward for his involvement." Contrary to the Petitioner's claims, Mr. Sams did not "change" his testimony at trial. Rather, he testified on direct examination

by trial counsel that the Petitioner was not involved in planning the offenses and that he had never seen the Petitioner prior to Mr. Sams's arrest. On cross-examination by the State, Mr. Sams testified that Mr. Mathis told him and Ms. Turner that he had a friend from his hometown whom he trusted and that he would call him to come to Nashville and that Mr. Mathis's "partner" was to receive $6,000 of the proceeds from the robbery. Mr. Sams did not testify that the Petitioner was Mr. Mathis's "partner." Mr. Sams's testimony was simply that he had no personal knowledge that the Petitioner was involved with the planning or commission of the offense, but that Mr. Mathis had told him that Mr. Mathis's "partner" would partake of the crime and expected a share of the profit. On redirect examination, Mr. Sams reiterated that he did not know the Petitioner and had never seen him prior to Mr. Sams's arrest. The Petitioner has failed to present any evidence that trial counsel was deficient in questioning Mr. Sams or that any deficiency resulted in prejudice.

The Petitioner maintains that trial counsel was ineffective in failing to "emphasize" to the jury that neither the police officers nor Ms. Lewis saw the Petitioner with a firearm and, thus, discrediting Mr. Becker's testimony that the Petitioner was armed. The Petitioner offers no argument in his brief regarding how trial counsel should have "emphasize[d]" this information. Moreover, the Petitioner did not raise this issue in either his initial or amended petition for post-conviction relief, and this issue was not considered by the post-conviction court. Accordingly, this issue is waived. *See Rickman v. State*, 972 S.W.2d 687, 691 (Tenn. Crim. App. 1997) ("Generally, with respect to those seeking post-conviction relief, this court will not address post-conviction issues that were not raised in the petition or addressed in the post-conviction court").

### D.  Failure to Present Mr. Mathis or the Petitioner as Witnesses

The Petitioner next argues that trial counsel was ineffective in failing to call Mr. Mathis as a witness at trial. However, during a jury-out hearing held pursuant to *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), after the State closed its proof at trial, Mr. Mathis elected not to testify and thus chose to exercise his Fifth Amendment privilege against self-incrimination. *See Rock v. Arkansas*, 483 U.S. 44, 53 (1987) (recognizing the right to testify as a corollary to the Fifth Amendment privilege against self-incrimination). As a result, trial counsel was not deficient in failing to call Mr. Mathis as a witness.

The Petitioner also argues that trial counsel was ineffective in failing to prepare him to testify and in failing to call him as a witness once Mr. Mathis chose not to testify. However, the Petitioner did not raise this issue in his initial or amended petition for post-conviction relief and did not argue this issue during the post-conviction hearing. Accordingly, this issue is waived. *See Rickman*, 972 S.W.2d at 691.

## E. On Appeal

The Petitioner maintains that trial counsel was ineffective on direct appeal. Like claims of ineffective assistance of trial counsel, claims of ineffective assistance of appellate counsel are subject to the *Strickland* standard. *See Campbell v. State*, 904 S.W.2d 594, 596 (Tenn. 1995). A petitioner must establish both that appellate counsel was deficient for failing to raise or preserve an issue on appeal and that there was a reasonable probability that had the issue been properly raised, it "would have affected the result of the appeal." *Id*. at 597.

The Petitioner makes a one-sentence argument in his brief that "trial counsel was ineffective on appeal by not submitting transcripts of the hearings on the Motion for New Trial, Sentencing hearing, and Severance Motion hearing, precluding adequate review of these issues by this Court." On direct appeal, this court noted that the Petitioner failed to include the transcript of the severance hearing in the appellate record and that as a result, this court presumed that the trial court's denial of the Petitioner's motion was supported by sufficient evidence. *See Gregory Mathis and Elza Evans*, 2013 WL 4774130, at *7. This court also noted that although the Petitioner failed to include a transcript of the sentencing hearing in the appellate record, the record included the trial court's detailed sentencing order. *Id*. at *12. As a result, this court reviewed the Petitioner's challenge to the length of his sentences for aggravated burglary and aggravated robbery on the merits and upheld the trial court's decision. *Id*. at *12-15.

Trial counsel was required to furnish this court with a fair, accurate, and complete record of what transpired in the trial court with respect to the issues raised on appeal. *See* Tenn. R. App. P. 24(b). The Petitioner, however, failed to submit transcripts of the severance hearing and the sentencing hearing as exhibits during the post-conviction hearing, and the transcripts are not included in the appellate record. The Petitioner does not identify any issues that this court did not review on direct appeal due to the absence of the transcript of the hearing on the motion for new trial, and this court on direct appeal did not cite to the absence of the transcript of the hearing as a basis for declining to review an issue raised by the Petitioner on direct appeal. As a result, the Petitioner has failed to establish a reasonable probability that had trial counsel included the transcripts in the appellate record, it would have "affected the result of the appeal." *Campbell*, 904 S.W.2d at 597.

## CONCLUSION

For the foregoing reasons, we affirm the post-conviction court's denial of the Petitioner's petition for post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE